# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

\*

MELVIN E. THOMAS,                                    CIVIL NO. 06-cv-1994
                                                           (RCM)

                              \*

  vs.

                              \*

UNITED STATES DEP'T
OF JUSTICE, et al.
                              \*

## PLAINTIFF'S MOTION IN OPPOSSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGEMENT

Plaintiff, Melvin E. Thoams, proceeding in this matter in a pro se cap acity respectfully submits this Motion and accompaning Memorandum in Oppossition to Defendants Motion for Summary Judgement. In support of this Motion, Plaintiff files his Memorandum, his 107(H); 108(H) State-ment of Material Facts in Dispute, his "Verification", and he also submits four [4] afidavits; two are eye-witness accounts from witness Desiree Pitts (also the co-defendant) and one from Rose Wright, the other  two are Plaintiff's own  sworn affidavits. Plaintiff demonstra-tes that Defendants are not entitled to summaray judgement. See Rule 56(e), also Neal v. Kelly, 963 F2d 453(D.C.Cir.1992) and Local Rule 7(h). Plaintiff has set forth specific facts showing that there is a genuine issue for trial. If summary judgement is to be granted, it should be granted tp Plaintiff. Request it be granted to favor him on cross-motion.

# RECEIVED

APR 2 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Plaintiff has filed the appropriate affidavits and other documentary evdence contradicting the assertations in Defendants materials. See Neal v. Kelly, 963 F2d 453 (D.C.Cir.1992); see also Local Rule 7(h) Fed.R.Civ.P.56(e).

Date _April 2th 2007_

Respectfully submitted,

_Melvin E. Thomas_

Melvin E. Thoams #03584-000
USP Terre Haute-P.O.Box 12015
Terre Haute, Indiana, 47801

"M-ii-"

## APPENDIX

───────────────────────

NINE PAGES THAT WERE RELEASED BY DEFENDANT............EXHIBIT# (1)

AFFIDAVIT OF DESIREE PITTS............................EXHIBIT# (2)

AFIDAVIT OF MELVIN E. THOMAS..........................EXHIBIT# (3)

AFFIDAVIT OF MELVIN E. THOMAS[2d] AFFIDAVIT...........EXHIBIT# (4)

ORIGINAL COMPLAINT/MADE BY DETECTIVE GOODRIDGE........EXHIBIT# (5)

PREVENTIVE DETENTION HEARING/DETECTIVE GOODRIDGE......EXHIBIT# (6)

WASHINGTON POST NEWS PAPER CLIPPING...................EXHIBIT# (7)

RULE (11)  INQUIRY/PROSECTOR HIEDI PASICHOW...........EXHIBIT# (8)

COSGROVE/DR. MITCHELL REPORT SHOWING PLAINTIFF'S CHANGE.EXHIBIT (9)

PRIOR FOIA REQUEST MADE...............................EXHIBIT# (10)

HIREING OF PRIVATE INVESTIGATER.......................EXHIBIT# (11)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*

MELVIN E. THOMAS,                          CIVIL NO.06-1994(RMC)

*

vs.

UNITED STATES                      *
DEP'T OF JUSTICE, et al.

---

PLAINTIFF MELVIN E. THOMAS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS MOTION FOR SUMMARY JUDGEMENT

---

Plaintiff, Melvin E. Thomas, proceeding in a pro se capacity in the
matter herein, respectfully submits his Memorandum in Opposition to
Defendant Motion for Summary Judgement. For the reasons set forth
below, plaintiff has demonstrated that the Defendants are not enti-
tled to summary judgement. This Court is asked at this time to deny
Defendants motion and enter and order that Defendant release the
records requested, or; hold in camera review, or in the alternative
appoint an Amicus Curei to do an independant assesment of the records.

[A]        PROCEEDURAL HISTORY

After plaintiff had filed numerous FOIA/PA request with Defendant, an
other law enforcement entities in 2004, the Defendant responded on
April 1, 2004 acknolowging it's reciept by sending a number:[04-823]
Plaintiff never heard from Defendant again, eventhough he wrote often
to try to get a responce. In October 4, 2006, Plaintiff filed and
appeal, because no adverce decision had been made other than failure
to respond, Plaintiff filed this civil action in U.S. District Court
Plaintiff request two staements and any reports on his coat taken as

evidence because it contained a bullet hole in the inside coat pocket that exited the coat striking Terry Viands in the hand during the struggle, only because he was holding and yanking downward on the gun from the outside of the coat pocket, during a struggle. The coat was tagged as evidence # (7) in the crime scene search evidence paperwork. See Exhibit # 1. The defendants know that the original reports and the photograghs of plaintiff's coat containing the bullet hole will prove that detective Goodridge along with others committed perjury and fraud on the court to obtain the indictment, and the conviction. See Affidavit of Desiree Pitts, Exhibit # 2; also, Affidavit of Rose Wright, Exhibit #3; and of Melvin E. Thomas, Exhibit # 4.  Plaintiff is currently paralized and permanently confined to a wheelchair. Even so, he has been diligent in seeking information and evidence to prove the injustice in the prior proceeding in Superior Court. For the last (18) years. This information is needed to cure a fundamental defect in those proceedings and to remedy the conviction of an actually innocent person. Plaintiff may be "blameworthy-but-he is blameless of the plea and conviction. The fact-developement proceedures requested would allow plaintiff to show in a different matter, that he is imprisoned in total violation of the U.S. Constitution. The defendants should not be allowed to continue to with-hold exculpatory evidence that can prove a mans innocence. See Eastridge v. United States, 372 F.Supp.2d 26 (D.D.C.2005). An adequate Vaughn Index . facilitates the trial courts duty of ruling on the applicability of cert-ain invoked exemption, giving the requester as much information as poss-ible that he may use to present his case, and this enables the adversary system to opperate. See Cucci v. DEA, 871 F.Supp. 508,514(D.D.C.1994). On March 20, 2007, plaintiff recieved a partial denial from defendant, see Exhibit # 1, the letter states that (44) pages are being withheld in full. Because the 9 pages released are not in compliance to request, a Vaughn

-2-

Index is needed, because these pages are believed to contain the proof plaintiff needs to show that the prosecuting unit has been actively covering up a substantial error that "seriously affects the fairness, integrity and public reputation of the judicial proceedings'...independently of defendants innocence". See United States v. Olano, 507 U.S. 725,736-37(1993). In the interest of justice, plaintiff must give this Court reason to believe that the defendants are not releasing the records requested in the absence of "bad faith". Plaintiff points to the fact that if the defendants release any of the requested records, at all, his innocence will immediately be shown, and so will the facts that the government allowed this case to rest on fraud on the court and perjury, all committed by it's witness', and because of the fact that plaintiff was found incompetent to stand trial on (3) separate occassions, and his attorney was      ineffective. He also points to the affidavit's of Desiree Pitts-codefendant: affidavit of Rose Wright-both eye witness accounts; and also his own submitted affidavit as some evidence to support his request for discovery. See Clemons v. Bowersox.  When the government knowingly withholds exculpatory evidence and allows false testimony to be presented as the facts of the case, there must be some avenue available to the defendant to remedy this sort of violation of "fundamental fairness". See Waley v. Johnston, 316 U.S. 101, 105 (1942). Plaintiff has adequately supported his request for discovery an or fact developement proceedures by proffering some evidence tending to support his allegations. See Clemons v. Bowersox, NO. 4:97-cv-2344(E.D.MO. Aug. 10, 1988) Therefore, plaintiffs motion should now be granted, and defendants motion for summary judgement/dismissal should be denied. Further, defendants should be ordered to comply with the compilation of a Vaughn Index on the (44) pages withheld; discovery request an in camera review.

-3-

**[B]**    THERE IS NO BASIS FOR SUMMARY JUDGEMENT FOR THE
           DEFENDANT.

There is no basis for Summary Judgement in favor of Defendant at this time. As set forth in the Statement of Disputed Material Facts that accompany this Memorandum. The facts regarding the underlying (3) year delay, the adequacy of the search and whether Defendant (1) improperly (2) wihheld (3) agency records and whether the withholding of the records and reports done on the coat was in "bad faith" are in dispute. Consequently, there is no basis for Summary Judgement at this time, and this case is appropriate for discovery and other -fact developement proceedures, such as appointment of Amicus Curia to intervene or a Special Master of the Court. See Green v. Dalton, 164 F3d 671 674(D.C Cir.1999) If the Court determines to consider matters out-side of the record or pleadings, in such a way that sworn documentation from plaintiff is necissary to oppose Summary Judgement, Plaintiff respectfully request that the Court permit plaintiff to submit any sworn documents or depositions the Court deems appropriate. Defendants have released 9 pages of records, none of which are relevant to plaintiffs request. The Vaughn Index is also inadequate. And there are no mention of the coat worn by plaintiff, no reports on the coat as requested. The search and the reply is in "bad faith". There is no exemption to deny plaintiff the reports on his personal property that can prove his innocence. Also, no exemption that preclude a redacted and segregated portion of the statement requested of Terry Viands and of Craige Field.
This Court should hold In Camera Review of the requested records to determine if there withholdings are done in "bad faith". A Vaughn Index should be compiled on the coat belonging to plaintiff along with the photograghs taken of the coat. See Exhibit # 1. Plaintiff submits his

-4-

own affidavits and other documentary evidence contradicting the assert-
ations in Defendants materials. See Neal v. Kelly, 963 F3d 453(D.C.)
see local Rule 7(H),8(H) Fed. R.C.v. P.56(e). Because there is a genuine
issue of material facts, Summary Judgement should not be granted for the
Defendants. Because the genuien issues are-"(1) Whether the DEefndants
(3) year delay in anwsering the FOIA/PA request was in "bad faith", (2)
Whether the denial after the delay and only after Plaintiff filed a
complaint in Federal Court, (3) Was an improper agency action." (4)
Whether the denial of specific request of statements of Terry Viands,
Craige Field and Cris Ashcroft-all in concerned with a case that has
been closed for the last [18½] years, and the refusal to segregate the
statements or to redact them to protect personal information would-
"qualify as (1) improperly, (2) withheld, (3) agency records." U.S.
Dep't Of justice v. Tax Analyst, 492 U.S. 136,142 (1989)(quoting)
Kissenger v. reporters Comm. For Freedom of Records press, 445 U.S. 136
150(1980).see U.S.C.§ 552(a)(4)(B).  (5) Whether the Defendant conducted
and adequate search reasonably calculated to uncover all responsive
records. (6) Defendants have not met there burden demonstrating the
adequacy of the search.

In there MOtion For Summary Judgement, Defendants advance the myopic
argument that records Plaintiff seeks are exempt under FOIA PA, therefor
entitling them to judgement as a matter of law. To the contrary, because
of the affidavits and other documents Plaintiff has submitted with his
Opposition To  Summary Judgement, there is a genuine issue of material
fact. Plaintiff asserts that the (3) year delay was in "bad faith", an
that Defendants have only responded because plaintiff brought a civil
action against Defendants. This fact alone easily demonstrates that def-
endants had not planned to respond to "any of the numerous request that

-5-

have been submmitted over the years by plaintiff. If he would not have filed this action in Federal Court, the Defendants would have continued the posture of ignoring plaintiffs FOIA/PA request. Defendants do not want the prosecutor in this case, Hiedi Pasichow, wrong doing to be brought to the light. The fact that thier own prosecutor has participated in such devious an unconstitutional conduct such perjury and wihholding of exculpatory evidence, and allowing Det. Goodridge to do the same. Plaintiff request because of the seriousness of the allegations and the fact that he supports them with some evidence, that this Court employ a Special Master or appoint and Amicus Curie to investigate these issues and to report the findings to the Court on whether there is evdence that defendants are withholding records in "bad faith".

[c]      PLAINTIFF PRO SE FOIA/PA ACTION IS ENTITLED
         TO THE BENIFIT OF ALL REASONABLE INFERENCES

Plaintiff filed his complaint pro se. It is axiomatic that a "pro se complaint " must be liberally construed, granting the complainant the benifit of all inferences that can be derived from the facts alleged". Pryor-El v. Kelly, 892 F.Supp. 261,266(D.D.C.1995)(quoting Schuler v. United States,617, F2d 605,608 (D.C.Cir.1979). Moreover, "[a] pro se complaint should not be dismissed nor should summary judgement be granted for the defendant when there is a reasonable probability that the (3) year delay in responding to plaintiff request may have been in "bad faith". If Summary Judgement is granted, it should be granted for Plaintiff, Melvin E. Thomas on his Cross-Motion for Summary Judgement. Defendants are mistaken as to the charge, yet another untruth. It is siad that plaintiff was involved in an armed robbery which led to the shooting (see Defendants Motion For Summary Judgement-Page '8' n.29. THOMAS WAS INVESTIGATED FOR ARMED ROBBERY DURRING THE COURSE OF WHICH HE FIRED NUMEROUS SHOTS. Plaintiff was investigated for shoplifting.

-6-

**[D]**    PLAINTIFF HAS A **PUBLIC    INTEREST** IN THE
RELEASE OF THE RECORDS SOUGHT

Plaintiff Has a public interest in the rquested records as they can prove his innocence and that he is incarcerated in violation of the U.S. Constitution, and that the prosecuting unit participated in fraud on the court, committed perjury and withheld exculpatory evidence. This is the public interest that exist which can overcome any privacy interest. His personal and public right to a fair trial, with out the infection of fraud on the court, perjury and the withholding of exculpatory evidence. See United States v. Olano, 507 U.S. 725, 737 (1993). Also the public interest is in exposing eregeous erros such as when the prosecution unit overzealiously pursues a prosecution by means that serioly affect the integrity of the Judicial System by proffering fales evidence using perjury and then withholds exculpatory evidence, not only during the criminal case [ 18½ ] years ago, but [ 18½ ] years later, when a plaintiff request records, over, and over and over again. Plaintiff has submitted documents that tend to call the Defendants nondisclosure into question. See Oguaju v. United States, 288 F3d 448 (D.C.Cir.2002): on remand from the Supreme Court;U.S. App.D.C. NO.00-5454,August 17,2004 in light of "FAVISH", 541 U.S. 124 S.CT. 1570(2004) The Supreme Court held in Favish, that in order to outweigh a third party's privacy interest protected by the Exemption 7(C) to the FReedom of Information Act, 5 USC § 555(b) (7)(C), a requester " must produce evidence that warrent a belief by a reasonable person that the alleged government impropriety might have occurred". 124 S.CT at 1581. " Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the Court to balance against

-7-

cognizable privacy interest in the requested records." Id.at 1582.  The criminal case in which the records sought pertain to is 18½ years old, and the 7(C) exemption is unwarrented at this time, especially disclosure of plaintiff personal coat records and photograghs. There would be no danger in releasing the statements of the named witness' in redacted or segregated form either. The public interest is that the United States Constitution protects plaintiff from these types of violations that occurred in his criminal proceedings. The public should be made aware of incidents when it's hired officials, prosecutors and law enforcemnt officials, knowingly and willfully violate the U.S. Constitution to obtain a conviction. These types of violations are not tenable in a system that is Constitutitonally bound to accord it's defendants Due Process. The public interest rest in favor of plaintiff because he has shown that the prosecutor and the detectives dishonest conduct and unwarrented concealment of the true facts of the case, "should attract no judicial appropriation". See Kyles v. Whitley, 514 U.S. at 440; Berger v. United States, 295 U.S. at 88 (1935). The public interest here is in favor of notifying the public when it's officials stoop to indecent levels to obtain a conviction, especially when the person agrieved is still in prison as a result. See Olmstead v. United States, 277 U.S. 438,484(1928). It is of National Importance that plaintiff be given the records he has requested. Not only for him, but for others simulary situated. Decency, security and liberty alike demand that government officials shall be subjected to the same rules as are comands of the citizen. The public needs to know that the prosecuting unit decieved the Court along with the Grand jury depriving plaintiff of a fair trial. This action "seriously affected the fairness, the integrity and the public reputation of the judcial proceeding". See Olano, 507 U.S. 725,736(1993)

The reason for requesting these records is not only to right a wrong, but also, so the public can feel comfortable in knowing that when it's trusted officials break the law, and it comes to light, no matter how many years later-and  the person is still suffering as the result-the public will best be served by haveing the knowledge of the government impropriety and and that it's Courts have intervened and corrected the fundamental defect in the prior proceeding by fashioning and appropriate remedy for the defendant/plaintiff. The public interest in disclosure must be evaluated in light of FOIA's central purpose: to open agency action to the light of public scrutiny. See U.S. Dep't of Justice v. Reporters Commitee For Freedom of The Press, 489 US 749,762(1989)id at 772. (qouting Dep't of Air Force v. Rose, 425 US 352,372(1976). The public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens right to be imformed about what there government is up to. Davis v. Dep't of Justice, 968 F2d 1276,1282(D.C.Cir.1992) (qouting REporters Committe,489 US at 773). Plaintiff is not seeking per-sonal information of third party's, he is only seeking portions of the statements given by named witness' Terry Viands and Craige Field as to how they had described what the witnessed as to the 27th of December 1989. No kind of personal or privacy interest prevents the release of these statements.The Defendants argue that Courts have explicitly reco-gnized that privacy interest of third party's mentioned in law enforce-ment files are substantial, while [t]he public interest in disclosure [of third part identyties] is not just less substantial, it is insubst-antial. See Safe card Services Inc. v. SEC, 926 F2d 1197,1205(D.C.Cir. 1991). Plaintiff asserts that the public interest will best be served by the Court ordering the release of the records, this way the public will see it's Justice System at work corretting and remedying substan-

-9-

:tial Constitutional Violations by officers of the Court. Again, plaintiff has never sought information for anyones identity, as Defendant states over and over in there Motion For Summary Judgement. Plaintiff knows the identity's of the witness' whose statements he seeks. [Terry Viands, and Craige Field] Plaintiff also knows other witness' identity. So DEfendants arguement is misplaced and there are Material Issue's and Facts In Dispute. Because the anwser and search and <u>Vaughn Index</u> is inadequate and the requested records could have been and should have been released in segregated or redacted form. The DEfendants argument's are inopposite to plaintiffs numerous FOIA/PA request he has made over the years, and Defendants have not come close to meeting the burden as they claim, that Defendant is entitled to Summary Judgement. The Defendant took over (3) years to anwser the FOIA/PA request, and it should be noted that Defendant did not anwser until plaintiff brought this Civil Action in this Court. The denials cited under Exemptions are misapplied. Plaintiff  only seeks, and have only sought, certain descriptions of what Terry Viands told police that happend to him and what Craige Field told police happened to him on December 27, 1989. No personal information was ever requested. Secondly, plaintiff requested any and all reports done on his personal property [a **green** trench coat with a bullet hole in the pocket ]**reports** and photograghs to be exact. The Defendants made no mention of **the** specific request of this coat in niether there Motion For Summary Judgement, nor in there <u>Vaughn</u> <u>Index</u>. Because plaintiff has made specific request, and Defendants failed to make specific reply's there are genuine issues of Material Facts in Dispute, and the <u>Vaughn</u> <u>Index</u> is inadequate. In Favish, tHe Supreme Court held that where there is a privacy interest protected by exemption

-10-

7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the perfomance of there duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Plaintiff meets his burden because he has produced evidence, [affidavit's; Court records,and the Verification of his papers] that would warrent a belief by a reasonable person that the alleged government imporopriety might have occured. See Favish, 124 S.CT. at 1581. Plaintiff points to the newspaper article ran by the Washington Post on the 28th of December 1989 which ran the story on this incident:

> "As Field pulled his blue jeep cherikee into a parking space on "O" st, the man appeared at his window, opened the back door,jumped inside and yelled my mothers been shot start driving Field said. Field said he opened and told him no I'm a doctor I'll go see her. The man then pulled out a handgun Fields said. The doctor screamed at his wife to get out of the car, and Field said he pulled the keys out of the ignition and slid out he front seat . "My first thought was I hope he dosent hit me anywhere thats fatal, said the doctor."

See Washington Post Story Exhibit #__7__.

Plaintiff asserts that the prosecution stated that plaintiff put a gun to the back of Mr. Fields head. But if this is what happend, why didnt Mr. Fields mention it to the reporter? Because it did not happen like that. It would defy logic and reason for a person to tell his wife to get of the car, and then, take the keys out of the ignition, and then, slide out of the front seat, all while a gun is pointed at the back of his head. Also, because he was a doctor, he would know that being shot in the back of the head is as fatal as it gets, so he would not say this.

-11-

Plaintiff produces "substantial evidence" that would warrent a belief by a reasonable person that the Dep't of Justice has acted in "bad faith" and have mishandled his FOIA/PA request. See National Archives and Records Administration v. Favish, 541 U.S. 124 S.CT. 1570 (2004). In Favish, the Supreme Court held that in order to outweigh a third-party's interest in privacy protected by Exemption 7(C) to the Freedom of information Act, 5 U.S.C. § 552(b)(7)(C), a requster "must produce evidence that would warrent a belief by a reasonable person that the alleged government imporopriety might have occured". 124 S.CT. at 1581. Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the Court to balance agaisnt the cognizable privacy interest in the requested records. Id 1582. Plaintiff submitts his affidavit [Exhibit-#4]    with the affidavit's of co-defendant, Desiree Pitts [Exhibit-# 2] and of Rose Wright [Exhibit # 3] and also the original complaint given by Detective Goodrige [Exhibit # 5] and the preventive detention hearing [Exhibit # 6] both two different versions given by Detective Goodrige. These affidavits and records clearly establish government's misconduct, the original complaint states in part:

> "as they struggled with the def. in front of
> 1357 Wisc. Ave. N.W. There came a time when the
> def. produced a handgun and shot W-1 in his right
> hand. At this point W-1 let go of the def. along
> with W-2 and the def. fired off at least three rounds
> at W-1 and W-2. W-1 and W-2 took cover behind a car
> as def. fired another round at the witness-W-2 stated
> that he observed the def. fire one more round and then
> saw him stand on the northwest corner of Wisc. Ave. &
> "O" street".

See original complaint signed by Detective Goodridge on December 28, 1989 at Exhibit # 5. This proves that the sequence of the shots were rearanged by police at different stages in the proceedings.

The original complaint easily demonstrates that the first shot fired during a struggle, was the shot fired that struck Terry Viands in the hand. The coatt will prove that the facts were changed by the government, plaintiff's personal trench coat, which contains the bullet hole from the bullet that struck Terry Viands during that struggle. Also, the statements of the witness' plaintiff has sought FOIA request on only to prove this mere point that the very first shot fired was the shot that hit Terry Viands in the hand, only because he was pulling and yanking downward on the gun from the outsidde of the coats pocket. Plaintiff has met the evidentiaty standard established in Favish. Plaintiffs coat, the affidavit's, along with the Original Complaint and the Preventive Detention Hearing all warrent a belief by a reasonable person that the alleged government impropriety occured. The fact that Fraud on the Court occurred and that Detective Goodridge committed perjury-along with the fact that the defendants are arbitrarily and capriciously denying plaintiffs request for FOIA records demonstrates "bad faith" on the part of defendant Dep't of Justice, this Court should grant discovery, In Camera Review, order a <u>Vaughn</u> <u>Index</u>, and order the Defendant to release the entire prosecution file. At a minimum, this Court should order the defendant to release allreports and pictures of plaintiffs own personal coat and the wittness' statements requested. See Greenburgs v. FDA, 903 F2d 1213, 1217-18(D.C.Cir.1986) ("Plaintiff introduced evidence that placed material issues of fact in dispute") Plaintiff asserts that his request for the reports on his personal property could be released because there is no exemption that would prevent the reports done on his personal property. Also, thatall the request for records on the witness' statement could be released in segregated and redacted form and he ask the Court to order those witness' statements released in that way.

-13-

Plaintiff has presented substantial evidence showing the United States Attorney's Office-thruogh one or more of it's prosecuting Attorneys, namely Ms. Hiedi Pasichow, was involved and knowingly and willingly participated in Fraud on the Court and perjury and withheld exculpatory evidednce. The information requested will shed light on that agencys performance of thier duties. Where governmental misconduct is alleged as the justification for disclosure, the public interest is insubstantial [unless] the requster puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information **sought** is necessary in order to confirm or refute that evidence. See Computer Professionals For Social Responsibility v. United States Secret Service, 72 F3d at 905 (D.C.Cir.1996). Plaintiff has submitted the open Court proffer of Ms. Hiedi Pasichow during the Rule (11) inquirey (see Exhibit # 8) also Ms. Pasichow was present during the Preventive Detention Hearing (see Exhibit # 6) as his proff of the U.S. Attorneys Office involvement in in wrongdoing. The records Plaintiff has requested will confirm this. See Computer Professionals, (quoting-Davis v. Dep't of Justice, 296 U.S. App. D.C. 405, 968 F2d 1276, 1282(D.C.1992). The Supreme Court stated in U.S Dep't of Justice v. Reporters Comm. For Freedom of The Press, 489 U.S. 749, 776 103 LEd 2d 774, 109 S.CT. 1468(1989)-["The public interest to be taken into the balance is that in official information that sheds light on and agency's performance of it's statutory duties".] 489 U.S. at 773. Plaintiff argues that the records he seeks will reveal something about agency action. Hiedi Pasichow works for for the United States Attorneys Office and is under direct supervision of the Executive Office Of The United States Attorneys Office, and Detective Goodgrige is A Metropolitan Police Dep't worker making this one prosecuting unit.

-14-

Therefor Ms. Pasichow and the Defendant in this case are of the same
agency. Ms. Pasichow's misconduct, is agencys misconduct. The public
has a substantial interest in the disclosure of the records that will
shed light on Ms. Pasichows role in the investigation and prosecution
of plaintiff. Did she willingly and knowingly participate in perjury
and fraud on the court believing it would never surface because the
defendant was incompetent, as plaintiff alleges, or was she "bamboozeld
or hoodwinked". Plaintiff douts the latter.The truth in this case has
been covered up too long. Plaintiff asserts that because he has tende-r
redevidence and argument which, if believed, would justify his claim
of agency "bad faith" along with his claim that the prosecutor for
the same agency committed malfeasance, while the agency is committing
acts of misfeasance by allowing it's attorney's misconduct to continue
to be concealed, 18 years later. Plaintiff FOIA request is "in complete
conformity with the statutory purpose that the public know what it's
government is up to ". See Id at 773, 103 LEd 2d 774, 109 S.CT. 1468.
This [541 U.S. 172] phrase should not be dismissed as a convenient for-
malisn. It defines a structual necessity in a real democracy. The info-
rmation plaintiff seeks are statements such as the one given by Craige
Field on the day of his arrest to the Washington Post and CBS/NBC/ABC
News, also Terry Viands and others gave statements. This disclosure
to the News Media of the facts of the events waives any bona fide pri-
vacy interest  concealing now what was freely told to the public 18
years ago. The public interest will best be served by disclosure-to
release the records to plaintiff, or ordering the entire prosecution
file be released in segregated and redacted form. The Supreme Court
held in Favish that, "where there is a privacy interest protected by
Exemption 7(C) and the public interest being asserted is to show that

-15-

responsible officials acted negligently or otherwise improperly in the performance of there duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrent a belief by a reasonable person that the alleged government impropriety might have occurred. See Favish, [514 U.S. 175]. Plaintiff has satisfied **this** standard and met his burden.

## [E]    DEFENDANTS SEGREGABILITY CLAIM FAILS

The focus on the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions. Here, DEfendant did not adequately address the segregability issue, and merely states that, "In this case, Executive Office of United States Attorneys processed and carefully examined each page of responsive documents in order to determine whether any reasonable segregable  information could be released. "EOUSA" stated that no meaningful portions of the 44 pages withheld in there entirety could be released without destroying the integrity of yhe document or without identifying a third part individual or information provided with an understanding of confidentiality. The nine pages that defndant did release(see Exhibit #1) are useless and does not comply with plaintiffs request. Item number #7 in that Crime Scene Evidence Report is the personal coat of plaintiff that a specific request was made for information on the bullet hole in the inside coat pocket. No reports on the coat were released. See Board of Trade v. Commodity Future Trading Com., 200 U.S. App. D.C. 339(1980); **Johnson v. EOUSA, 354 US App. D.C. 49,310 F3d 771,776(D.C.Cir.2002).** In Board of Trade, this Court of Appeals

-16-

held, "more broadly the Act, as amended in 1974. mandates that (a)ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Beyond that the Courts have relied on the Acts overriding policy in [627 F2d 402] favor of disclosure to require eradication of identifying details not exempt in themselves-when such and excision renders otherwise exempt material disclosable. The Senate cited this approach with apprval in it's report accompanying the 1974 amendments to the Act, noting that under the new "segregable portion" Provision Courts must "examine the records themselves and require the release of portions tto which the purposes of the exemption under which they are withheld does not apply". The Supreme Court has placed the stamp of it's approval on this technique by requireing disclosure of information, after deletion of identifying details, that otherwise would have been protected by exemption. The defendants have not met there burden of demonstrating that the records requested cannot be segregated or redacted. No supporting justification was offered for there conclusion. In addition to no staement of it's reasons, defendant should have also described what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. Armed with such a description, both litigants and judges will be better positioned to test the validity of the agencys claim that the non-exempt material is not segregable. Plaintiff disputes the claim that records cannot be released because they cannot be segragated or redacted, and request the Court conduct in camera review, or appoint amicu curei.

**[F]**                    DFEENDANTS APPLICATION OF EXEMPTIONS
          (7)(C) (7)(D) (7)(F)  and EXEMPTION 6 ARE MISAPPLIED

Plaintiff conceeds that exemption 7(C) apllies to names of third part-
ies and to other identifying information but contest both the defenda-
nts decision to withhold certain statements and reports on the coat
taken into evidence, and it's failure to segregate and or redact the
records toe produce non-exempt information on pages that also contain
exempt information. Also, 7(C) ordinarily permits the government to
withhold only specific information to which it applies, not the entire
document or page in which the information appears. Any non-exempt inf-
ormation must be segregated and released, see 5 U.S.C. § 552 (b) unl-
ess the "exempt ad non-exempt information are inextricably intertwined
such that the excision of the exempt information would impose signifi-
cant cost on the agency and produce and edited document with little
information of value. In this case, there would not be any undue bur-
den on defendant if it excised the records that are "inextricably int-
ertwined" because plaintiff only request certain and particular state-
ments narrowed down to a particular time and place, the statements
made to police on 12-27-89 by Terry Viands and Craige Field. Plaintiff
should be the one to decide whether the information will be sufficient
in a edited form, instead of withholding records if edited would be
with little informational value. See Neufeld v. IRS, 207 U.S. App. D.C.
326 646 F2d 661 666 (D.C.Cir.1981). It is against this backdrop that
plaintiff contest the defendants withholdings under Exemptio 7(C).
Plaintiff opposition to summary judgement, conceeds that there is a
legitimacy in redacting "names or other identifying symbols" but argue
that merely because an isolated portion of a document need not be dis-
closeddoes not make the entire document or report exempt from disclo-
sure". This adequately presents this argument that under Exemption

7(C) only names (234 F2d 1328) and other identifying information can be withheld. In the motion and Declaration of John F. Boseker, is established that some of the "documents contain names of confidential-sources": it is not said that "all the third party information with which the prosecution of this case or investigation of plaintiff is "inextricably intertwined". Segregation may prove feasible when only that third party information "actually protected under exemption 7(C) such as the aformentioned "names and addresses and other identifying information" is excised. The Vaughn Index also leaves open the posibsibilty that some of the third party information as investigative data for law enforcement purposes. Exemption 7(C) does not necissarily cover all "investigative details", a catagory presumably distint from, and potentially far broader than the "names of individuals/personal information" to which the Index elsewhere refers. Only the latter, narrower of information is necissarily exempt. See Nation Magazine v. Customs Service, 315 U.S. App. D.C. 117 71 F3d 885(D.C.Cir.1995). Defendants fail in thier effort to show htis Court whether and to what extent release of the "investigative details" refered to in the Index and Declaration would reveal the identity or otherwise implicate the privacy interest of any third party. The defendant's constantly advance the misplaced assumption that plaintiff has sought "confidential informants personal information", this is not what plaintiffs FOIA/PA request concerns at all, and this Court can see the "smoke screen" and misdirection defendants use to avoid disclosure of two statements that certainly could be segragated and redacted for disclosure to plaintiff anlong with the reports on his coat. Plaintiff reaquest that the Court review the requested documents "in camera". See Quinon v. FBI, 318 U.S. App. D.C. 228 86 F3d 1222 1228 (1996).

**[G]**                     EXEMPTION 7(D)

Defendants state in thier Vaughn Index, " In addition, all material
withheld by application of Exemption (6)(7)(d) as iference of confid-
entiallity derived from violent nature of crime and type of personal
information contained within statements". The  Declaration states "in
the present matter, both individual and local agency sources furnished
confidential information(infered from the circumstances) to the USAO
in the cource of the investigation of and prosecution of Mr. Thomas".
[Again, plaintiff has not requested confidential information.]
"Information within the protected documents explicitly indicates that
the cooperating witness in the investigation supplied eyewitness info-
rmation to law enforcement officers in connection with this investiga-
tion with the requisite circumstances surrounding this violent and
intimidating act so as to give rise to an reasonable inference that
information was provided withan assurance of confidentiallity". See
Motion for Summary Judgement-Vaughn Index-Decl.John F. Böseker. Plain-
tiff asserts that there is insufficient evidence of an express grant
of confidentiality and that the nature of plaintiff's conviction, by
itself, supports the implied grant of confidentiality was understood.
Also, there could not have been an implied grant of confidentiality
becuase Terry Viands and Craige Field, CAptain Dewy Wiseman and others
gave public statements to the press and the media on the exact state-
ments plaintiff is seeking in his request. See Exhibit # **7** Washingt-
on Post News Paper, 12-27-89.

   **[H]**            AS APPLIED TO LAW ENFORCEMENT SOURCE
"This report is the property of the Metropoliton Police Department.
Niether it nor its contents may be disseminated tb unauthorized pers-
onel". Defendants claim this heading creats a reasonable understanding

of implied confidentiality. In Dep't of Justice v. Landano, the Court addressed the prophylactic rule protecting the identities of all criminal investigative sources undoubtedly would serve the Government's objectives and would be simple for the FBI to administer. But, we are not free to engraft that policy choice onto the statute that Congress passed". For the reasons we have discussed and consistant with our obligation to construe FOIA Exemptions narrowly in favor of disclosure, see John Doe, 493 U.S. at 152,107 LED 2d 462 110 S.CT. 471: Dep't of AirForce v. Rose, 425 U.S. 352 361 362, 48 LEd 2d 11, 96 S.CT. 1592 (1976), we hold that the government is not entitled to a presumption that a source is confidential within the meaning of Exemption (7)(D) whenever the source provides provides information to the FBI in the course of a criminal investigation." Here, Defendants devote most of there argument to assertations that plaintiff seeks confidential information from confidential sources and rely strongly on Exemptions (7)(C) (7)(C) (7)(D) and j2 (B)(6) stating over and over again taht the protections are for personal information of a broad range of people, other than the two named witness' Plaintiff has requested statements of, eventhough Defendants do add the two named individual witness' in the broad sweep. These Exemptions are inopposite because plaintiff has clearly and specifically described the witness' statement sought made to Metropolitan Police Dep'ts Second District on 12-27-89 and a report on plaintiff personal green trench coat that was taken into evidence becuase it contained a bullet hole in the pocket.

[I]                    AS APPLIED TO INDIVIDUAL SOURCE

In his Declaration made under penalties of perjury, Mr. John F. Boseker states in section #(36): "Mr. Thoams was investigated for an armed robbery during the cource of which he fired numerous shots at numerous bystanders wounding one person and threatening to harm others." [Plaintiff was not

involved in an armed robbery, nor was he investigated for armed robb-
ery ] This is not true. Plaintiff was involed in a **"shoplifting"**. Plai-
ntiff does not seek confidential information, but instead, what he seek
are the initial statements given at the crime scene or the station house
or the hospital to police on 12-27-89 by Terry Viands and Craige Field.
Plaintiff only wants to know which bullet did Mr. Viands say struck him
in the hand and whether or not he said he was holding onto the gun from
the outside of the coat pocket whenhe got shot during a struggle. (2)
palintiff seeks the statement of Mr. Field as to whether or not he said
plaintiff put a gun to the back of his head or not, and whether plaintiff
only requested a ride.

[J]       PLAINTIFF REQUEST THIS COURT NOW HOLD "IN CAMERA REVIEW"
The decision to conduct an in camera review is committed to the "broad
descretion of the Trial Judge". Lam Lek Chong v. DEA, 289 U.S. App. D.C.
136, 929 F2d 727 735 (D.C.Cir.1987)(qouting CArter v. Dep't of Commerce,
205 U.S. App. D.C. 240 830 F2d 388 392 (D.C.Cir.1987) see also NLRB v.
Robbins Tire & Rubber Co., 437 U.S. 214 224 57 LEd 2d 159 98 S.CT. 2311
(1978)(" The in camera [86 F3d 1229] review provision is descretionary
by its terms"] The principle benifit of an in camera review inspection
is that it enables the Trial Court to make a case-specific determination.
If, the requested documents are short in number, as in this case,
in camera review may save time and money. See Carter, 830 F2d at 393
(quoting Allen, 636 F2d at 1298) While in camera review need not be auto-
matic, in many situations it will plainly be necessary and appropriate.
See Quinon v. FBI,318 U.S. App. D.C. 228 (1996) also, when the dispute
turns on the contents of those documents, in camera review may be more
apprpriate. See Carter, at 393. In this case the defendants withheld (43)
pages, this is not the kind overwhelming review that constitue a conside-
ral amount of pages. Defendants rely on Thomas v. Office of U.S. Attorney

928 F.Supp. 245 251(E.D.N.Y. 1996)(A prisoners personal interest in information to challenge his conviction does not raise a FOIA-recognized interest that would be weighed against the subjects privacy interest.) See Motion FO Summary Judgement at page # 12. To the contrary, Thomas v. Office of Attorneys is a FOIA request for records and files of crime Boss John Gotti. The records sought were of Gotti's personal buisiness dealings and operations of his buisiness' and buisiness' own by the Gambino Crime Family in which Gotti was the "Boss", and also, of personal information addresses of the buisiness', the people who ran them, adrress' names, and the Gotti criminal prosecution. Plaintiff asserts there is no comparison to the two situations, and that case has no relevance inthis case, simply because plaintiff has only sought two simple statements and a report on his coat-no personal information has ever been requested-so there would be no invasion of personal privacy. The statements surely could be redacted and or segragated for release. This is just not the kind of case were there would be a seriouse risk of invasion of personal privacy. Plaintiff is sure that the reports he seeks are mainly describing the events that took place on 12-27-89, and are minute, "not personal information", because it is an arrest report. This a situation that requires this Courts case-specific determination by reviewing the withheld pages-photogragh of the coat and rports on the coat. This is not a case that this Court can make it'a determination on the motions filed because of the serious implications of fraud on the Court-perjury and the withholding of exculpatory evidence. Plaintiff respectfully request that this Court grant his humble request herein.

-23-

**[K]**     PLAINTIFF ARGUES THAT THE <u>VAUGHN</u> <u>INDEX</u>
IS INADEQUATE

The Defendant has produced an inadequately detailed <u>Vaughn</u> <u>Index</u>. See
Judicial Watch Inc. V. FDA, 449 F3d 141(2006). Plaintiff argues that
the Defendant have vaguely described some(most individual) documents.
Defendant Index/Declaration combination fails because it does not treat
each requested document individualy. An agency may not claim exemptioms
too broadly, thereby sweeping unprotected information within the stat-
utes reach. Mays v. DEA, 344 U.S. APP. D.C. 194,234 F3d 1324,1328(D.C.
Cir.2000)(Rejecting withholding all of documents containing "investig-
ative details" Because Exemption 7 does not automatically protect such
details). Broad, sweeping claims of privilege withheld documents would
impede judicial review and undermine functions served by the <u>Vaughn</u>
<u>Index</u> requirement. The agency must therefore explain why the exemption
applies to the document or type of document withheld and may not ignore
the contents of the withheld documents. See Campbell v. U.S. Dep't of
Justice, 334 U.S. APP D.C. 20 164 F3d 20,31(D.C.Cir.1998).

In conclusion Plaintiff Opposition To Defendants Motion for Summary
Judgement should be granted, and his request for fact-develoement
proceedures should also be granted because the Defendants refusal to
release the requested records was and is in "bad faith". Plaintiff has
produced "substantial evidence" that the Supreme Court held would be
needed to outweigh a third party's interest protected by Exemption 7(C).
See National Archives and Records Administratiuon v. Favish,541 U.S.
124 S.CT. 1570 (2004). Alternatively, Plaintiff request this Court app-
oint amicus or hold in camera review on the documents withheld, followed
by and Order from the Court to release the entire file or the statements
of Terry Viand and Craige Field and that all reports and photograghs of
Plaintiff

plaintiff's coat be released and the public interest will be served. The generation that made the Nation thought secrecy in Government one of the instruments of Old World tyranny and committed itself to the principle that a Democracy cannot function unless the people are permitted to know what thier government is up to. 105 35 LEd 2d 119, 93 S. CT. 827. The basic policy of full agency disclosure unless information is exempted under clearly delineated statutory language, Dep't of Air Force v. Rose, 425 U.S. at 360,361 48 LEd 2d 11, 96 S.CT. 1592, indeed focuses on the citizens right to be informed about what their government is up to. Official information that sheds light on an agencys performance of it's statutory duties falls squarly within that statutory purpose. The release of the information here will shed light on how the agency (prosecuting unit/and police-and the Executive Office of the U.S. Attorney's) opperates and about it's own conduct. Respnce releaseing the records will shed light on the agency opperation's and thier officials. There is undoubtedly some public interest in any agency or officials currupt conduct and criminal behavior such as fraud on the Court and perjury and the withholding of exculpatory evidence. This is true especially when the conduct may be in some way related to the agency or officials dealing's with the public. FOIA's central purpose is to ensure that the governments activities be opened to the sharp eye of the public's scrutiny. The public interest being advanced by plaintiff is significant because the public has a great interest in the dispenssation of justice and that the laws are applied equally and fairly. This is a substantial interest, because the public has a pecuniary interest in by which thier legal rights or liabilities are affected. Also, the inforomation plaintiff seeks is likely to advance that interest by assuring officials that they are bound by the public interest which will require them to deal with the public fairly and on reasonable terms. Disclosure

of the records would serve the core purpose of the FOIA because it wou-
ld significantly contribute to the publics understanding of the opperat-
ions and activities of it's government, United States Dep't of Defence
v. FLRA, 510 U.S. 487, 495(1994), by assuring the public that when a
person is accused of violating the law, that thi government will protect
that person from unconstitutional action, and when a person is found to
have been a victem of such unconstitutional action, that the people can
trust that there government and the Federal Courts will enforce that
portion of the United States Constitution guaranteeing rights and priv-
ileges to the individual-the first Ten Amendments and the <u>Fourteenth</u>
<u>Amendment</u> and <u>Fifth</u> specifically-right to Due Process and Equal Protec-
tion of the Laws.  "WE THE PEOPLE: of the United States, in order to
form a more perfect Union, Establish Justice, Insure Domestic Tranquility,
Provide for the common Defence, Promote the general Welfare, anSecure
the Blessings of Liberty to ourselves and our Posterity, do Ordain and
Establish this **CONSTITUTTION FOR THE UNITED STATES OF AMERICA"**. See Art.
-V-, **FIFTH AMEND.U.S.Const.,Art. -XIV-,FOURTEENTH AMEND.U.S.Const.**

[L]            DEFENDANTS PRIVACY INTEREST ARGUMENT FAILS
Defendants argue that disclosure would be an unwarrented invasion  of.
personal privacy. Plaintiff asserts that because of the fact that Craig
Field and Tery Viands and Captain Dewy Wiseman gave newspaper and Teliv-
ision interviews on the events in question, they have waived any privacy
interest they may have initially had. These statements were given to
reporters on December 27th, 1989, and the 28th, the 29th, and the 30th.
Because of the fact that Craige Field and Terry Viands made public state-
ments, making the public aware of the events, plaintiff or any other
member of the public is entitled to the same disclosure. See Exhibit #7
All plaintiff request is the initial statements given to police, which

-26-

if the statements are the same, there should be no reason to withhold them, unless the statements were changed. That is also a public interest in and of itself. See United States Dep't of JUstice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749,762(1989).

Plaintiff request should be granted, and Defendants Motion for Summary Judgement should be denied. This Court has been called upon by one of it's citizens, although a convicted citizen   his request are to right a wrong and he also calls upon  the U.S. Constitution that this Court may administer Justice agreeable to the usages and the principles of the law.

Respectfully Submitted.

April 28th 2007
(DATE)

Melvin T. Thomas
(Sincerally)

-END-

## CERTIFICATE OF SERVICE

I, Melvin E. Thomas, due hereby state under the penalties of perjury that I have mailed a copy of the enclosed Motion and Memorandum In **Opposition to Defendants** Motion For Summary Judgement, along with Verification, a 108(H)-107(H) Statment of Material facts in Dispute, and my Affidavit's and Exhibits along with a Motion fo Discovery on this _20th_ day of _April_ 2007.


DATE _April 25th 2007_


_Melvin E. Thomas_

Melvin E. Thomas

# EXHIBIT 1



U.S. Department of Justice

**MAR 16 2007**

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

---

Requester:  Melvin Earnest Thomas            Request Number:  04-823

Subject of Request:   Self/Specific Records (witness statements/coat reports) Cr.No. F-14491-89
                   U.S. District Court, Superior Court, District of Columbia

Dear Mr. Thomas:

        Your request for records under the Freedom of Information Act/Privacy Act has been
processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the
official record-keeper for all records located in this office and the various United States Attorneys'
Offices.

        To provide you the greatest degree of access authorized by the Freedom of Information Act and
the Privacy Act, we have considered your request in light of the provisions of both statutes.

        The records you seek are located in a Privacy Act system of records that, in accordance with
regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy
Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and
are making all records required to be released, or considered appropriate for release as a matter of
discretion, available to you. This letter is a [ x ] partial [    ] full denial.

        Enclosed please find:

____0____ page(s) are being released in full (RIF);
____9____ page(s) are being released in part (RIP);
___44____ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to
determine if any information could be segregated for release.**

        The exemption(s) cited for withholding records or portions of records are marked below. An
enclosure to this letter explains the exemptions in more detail.

        Section 552                                     Section 552a

[    ] (b)(1)      [    ] (b)(4)      [    ] (b)(7)(B)        [ x ] (j)(2)
[    ] (b)(2)      [    ] (b)(5)      [ x ] (b)(7)(C)        [    ] (k)(2)
[    ] (b)(3)      [ x ] (b)(6)      [ x ] (b)(7)(D)        [    ] (k)(5)
_____          [    ] (b)(7)(A)   [    ] (b)(7)(E)        [    ] _____
_____                            [ x ] (b)(7)(F)

        [    ] In addition, this office is withholding grand jury material which is retained in the District.

[   ]    A review of the material revealed:

    [   ]    _____ page(s) originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the following component(s) listed for review and direct response to you:_____

    [ x ]    There are public records which may be obtained from the clerk of the court or this office, upon specific request. If you wish to obtain a copy of these records, you must submit a new request. These records will be provided to you subject to copying fees. In addition, please note that there are other records in your file than those specifically requested, which may also be requested in this same manner.

    [   ]    See additional information attached.

    This is the final action this office will take concerning your request.

    As you have initiated judicial review by filing a complaint in the United States District Court, ***Melvin Thomas v. U.S. Dept of Justice, Civ. No. 1:06-cv-01994(RMC)*** you are not required to file an administrative appeal of this determination.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

P.D. 668 Rev. 2/74

**METROPOLITAN POLICE DEPARTMENT**
**CRIME SCENE EXAMINATION SECTION**
**EVIDENCE REPORT**

CSES NO. 89/19187   CCN 733 - 948   TECHNICIAN 7C   UNIT 2 D

DATE 12/27/89   TIME 1410   OFFENSE A W I K

COMPLAINT OR DECEDENT 7C   LOCATION f/o 1357 Wisconsin Ave. N.W.

TO: Commanding Officer
Crime Scene Examination Section

ATTENTION: 7C

FROM: 7C
2 D CSSU

The below Evidence was recovered on the above case, and is presently being held in the Crime Scene Examination Section for processing and examination.

ITEMS                    EXACT LOCATION OF RECOVERY

On Wednesday 12/27/89, about 1410 hours, the above named technician's responded to the above listed location at the request of the dispatcher, to assist with the investigation of the above captioned offense.

Upon arrival the following services were performed. Four rolls of color photographs were taken of the scene. Film strip #s B22 - 825, 826, 827 & 828.

The scene was sketched and measured.

The following items of evidence were recovered from the scene.

Item # 1 Lead fragment......recovered from left front floor board of 89 Pontiac Sunbird, blue, 4 door bearing Va. tags RMU 719: Parked in front of 1403 Wisconsin Ave. N.W. (rear windshield shot, causing damage to front windshield)

Item # 2 Lead slug.........recovered from between drivers door and outside rearview mirror. of Green 2 door Ford Torino bearing D.C. tags 909-942. Parked in front of 1357 Wisconsin Ave. (right front tire flat)

Item # 3 Lead slug.........recovered from street next to left rear wheel well of D.C. 909-942.

Item # 4 Biege cloth cap....brandname Dobb's Fifth Avenue....recovered 7C

Item # 5 Cloth bag, white in color with multi color stripes......recovered 7C

Item # 6 Brown suede jacket with fur lining....recovered from inside Item # 5 Brand name Britches, size medium.

Notes: Items # 1 thru 6 placed on 2nd District Property Book # 223 Page 279.

(Reviewing Official)      FOR ID USE ONLY      (Reporting Officer) 7C

Latents are of no value    Following Latent Prints are of value:    Forwarded _____ By _____
Per _____    ☐ FINGERS ☐ PALMS ☐ TIPS    Entered _____ By _____
Date _____    Per _____    Property Book No. _____ Page No. _____
Date _____

87P8381
7C

.D. 698  Rev. 10/75

METROPOLITAN POLICE DEPARTMENT
WASHINGTON, D.C.

SUPPLEMENTARY EVIDENCE REPORT

| ⁰: Commanding Officer Crime Scene Examination Section | | CSES NUMBER 89-19187 | |
|---|---|---|---|
| 7c | OFFENSE AWIK | OFFENSE DATE 12-27-89 | LOCATION OF OFFENSE 1300 blk Potomac Ave. NW |
| ATE OF REPORT 2-27-89 | LOCATION OF REPORT Second District | COMPLAINT NO. 733-948 | TECHNICIAN 7c |

On Wednesday, 12-27-89, at approximately 1421 hours the above Crime Scene Search Officer responded to the above location at the request of 7c            assigned to the Second District Canine Unit to assist with the investigation of the above captioned case. Upon arrival the following services were performed:

Color Photographs———————————(1) One roll of Kodak GA 120 film. Taken of the scene. FSN B22-829.

Sketch————————————————Made of the scene.

Item # 7——————————————(1) One trench coat, green in color. Brand-name "The Rannoch Coat", size extra large. Recovered from the 1300 blk of Potomac Ave. NW

Signature of Reviewing Official

J-90208

7c

P.D. 698  Rev. 10/75

# METROPOLITAN POLICE DEPARTMENT
## WASHINGTON, D.C.

### SUPPLEMENTARY EVIDENCE REPORT

| TO: Commanding Officer Crime Scene Examination Section | | | CSES NUMBER 89-19187 |
|---|---|---|---|
| 7c | OFFENSE AWIK | OFFENSE DATE 12-27-89 | LOCATION OF OFFENSE r/o 1316 Potomac Ave. NW |
| DATE OF REPORT 12-27-89 | LOCATION OF REPORT Second District | COMPLAINT NO. 733-948 | TECHNICIAN 7c |

On Wednesday, 12-27-89, at approximately 1450 hours the above Crime Scene Search Officer responded to the above location at the request of    7c      assigned to the Second District Canine Unit to assist with the investigation of the above captioned case. Upon arrival the following services were performed:

Color Photographs————————————(1) One roll of Kodak GA 120 film. Taken of the scene. FSN D22-830.

Item # 8————————————————(1) One 5 shot bluesteel s/w 2" .38 caliber revolver. Recovered from the rear of 1316 Potomac Ave. NW.

Item # 9 thru 13————————(5) Five .38 caliber spl + WW super expended shell casings. Recovered from the chamber (cylinder) of item # 8.

Signature of Reviewing Official

J-90208



P.D. 698  Rev. 10/75

METROPOLITAN POLICE DEPARTMENT
WASHINGTON, D.C.

SUPPLEMENTARY EVIDENCE REPORT

| TO: Commanding Officer: Crime Scene Examination Section | | CSES NUMBER 89/19187 |
|---|---|---|
| c                  7c | OFFENSE A W I K | OFFENSE DATE 12/27/89 | LOCATION OF OFFENSE 1357 Wisconsin Ave. N.W. |
| DATE OF REPORT 12/27/89 | LOCATION OF REPORT 2 D | COMPLAINT NO. 733 - 948 | TECHNICIAN 7c |

On Wednesday 12/27/89, about 1600 hours, the undersigned technician responded to the Second District station, at the request of                     7c                     to assist with the recovery of evidence.

            recovered the below listed items from the complainant at the Emergency room of GeorgeTown Hospital.

Item # 14 White Plastic bag.

Item # 15 Mans Jacket, red in color, brand name Columbia, size XL with green lining.

Notes: items # 14 & 15 placed on 2nd District property Book # 233 page 270.

Signature of Reviewing Official

J-90208

Signature of Technician Assigned

7c

P.D. 698  Rev. 10/75

METROPOLITAN POLICE DEPARTMENT
WASHINGTON, D.C.

**SUPPLEMENTARY EVIDENCE REPORT**

| TO: Commanding Officer: Crime Scene Examination Section | | CSES NUMBER 89/19187 | |
|---|---|---|---|
| DATE OF REPORT 12/27/89 | OFFENSE A W I K | OFFENSE DATE 12/27/89 | LOCATION OF OFFENSE 1357 Wisconsin Ave. N.W. |
| | LOCATION OF REPORT 2 D | COMPLAINT NO. 733 - 948 | TECHNICIAN 7c |

On Wednesday 12/27/89, about 1700 hours, the undersigned technician responded to the 2nd District Detectives officer at the request    7c    to recover the defendants clothing. The below listed items were recovered from Melvin E. Thomas dob of 12-11-61, B/M arrest # 0289/02986.

Item # 16 beige sweater with briwn buttons. Brand name Cambridge, size Medium.

Item # 17 Olive pullover shirt, brandname fashion world, size medium.

Item # 18 one pair of pants, gray in color, brand name Tom Taylor, size 29.

All items placed on 2nd Distriat Property Book # 233 Page 270.

7c

_Signature of Reviewing Official_                    _Signature of Technician Assigned_

J-90208

P.D. 698 Rev. 10/75

## METROPOLITAN POLICE DEPARTMENT
### WASHINGTON, D.C.

#### SUPPLEMENTARY EVIDENCE REPORT

| TO: Commanding Officer Crime Scene Examination Section | | | CSES NUMBER 89-19187 |
|---|---|---|---|
| 7c | OFFENSE AWIK | OFFENSE DATE 12-27-89 | LOCATION OF OFFENSE r/o 1316 Potomac Ave., NW |
| DATE OF REPORT 12-27-89 | LOCATION OF REPORT Second District | COMPLAINT NO. 733-948 | TECHNICIAN 7c |

On Wednesday, 12-27-89, at approximately 1730 hours the above Crime Scene Search Officer responded to the above location at the request of 7c assigned to the Second District Canine Unit to assist with the investigation of the above captioned case. Upon arrival the following services were performed:

The below described item was processed for Latent Prints using copper powder with the following results:

Item # 19 Latent Prints————————————————Lifted from item # 8.

Item # 20 Latent Prints————————————————Lifted from item # 8.

Notes: Processed was a .38 caliber bluesteel s/w 2" .38 revolver. Serial # 85J344. All property placed on Property book 233 page 270. Case closed with the arrest of Melvin E. Thomas BM Dob 12-11-61

7c

Signature of Reviewing Official

J-90208

Signature of Technician Assigned

EXHIBIT 2

## AFFIDAVIT OF DESIREE PITTS

I, Desiree Pitts due state under the penalties of perjury that the following is true and correct to the best of my knowlrdge:

1) That Mr. William Dansie told me and Melvin that if Melvin were to enter the guilty plea he would only recieve a 5 to 15 year sentence and that I would get probation.

2) That if Melvin did not accept the plea then I would be tried under the aiding and abbetting liability statute and if found guilty and could be sentenced for all the charges in the indictment, even thogh I didnt commit them-all the shooting-the attempt kidnapping

3) That Mr. Dansie told us that the governments case would find Melvin guilty and there fore, I would be found guilty too.

4) That I was pregnent with Melvin child.

5) That Mr. Dansie told me and Melvin that this is the law-anybody who was involed would be found guilty as if they were the ones who committed the crimes.

6) Now I did not know anything about the law, and niether did Melvin, so we thought that what Mr. Dansie had told us was the truth, I was pregnat at the time of our arrest.

7) That right aftrer the shopliffting, and before Melvin got into the struggle with the two guards, I was put in hand-cuffs behind my back, and thats when I saw the guards jump on Melvin and one guard was choking him.

8) The other guard was pulling on the outside of Melvins coat, really hard. I knew he was yanking on the gun in his inside pocket.

9) Thats when I heard the gun fire one shot.

10) at that time the guards let go of Melvin, The gaurd that was pulling on the gun yelled and said I've been shot, and ran past me into the store.

11) That I was aboput '2 feet away from the struggle, and never took my eye's off of what was going on.

12) That Melvin is innocent of intentionally shooting the guard because the guard was pulling on the gun really hard and they were really struggleing ruff like.

13) That the police changed the facts all around and lied on Melvin , when they said that Melvin pulled out the gun and aimed it and shot once an missed, and shot again, a second time and that second shot hit the guard inthe hand. It didnt happend that way at all.

14) All they had to do was look at Melvins coat because now it has a bullet hole in it.

15) I knew the story all the time-but Mr. Dansie told us if we went to trial and told the tory like that-that I would get aiding and abbetting liability.

November 6, 2004

Witnessed by _[signature]_

_Desiree Pitts_
Desiree Pitts-F14492-89

: have the original.
  "... me"

# EXHIBIT 3

DECLARATION/AFFIDAVIT OF ROSE MARIE WRIGHT

I, Rose M. Wright, hereby stae as follows under the penaltiy of perjury.

That the statements herein are true and correct.

That I have known Melvin Thomas for over 20 yeasrs.

That I was with Melvin and Desiree on the day of thier arrest on Dcember 27, 1989.

That I occaisionally would baby sit for them, Melvin and Desiree,

That on the day of December 27, 1989, I rode along with them after I had wacthed little Melvin, thier son the night before.

That we drove to Georgetown to get breakfast.

That Melvin and Desiree left the eatery and told me to go to the car and get the cigaretts. It took me some time to find the cigaretts, not really long, but they were up under the cup holder.

That I heard gunfire and saw people running across the street, I looked down the street and saw Desiree being pushed inside a store and Melvin backing across the street. Then I heard 3 or 4 more shots.

Thats when I got in the car and started it up and pulled onto Wisconsin Avenue's street and pulled around the corner to 'P' street to try and cacth up with Melvin on the other end of 'O' street.

That I got out of the car and began to walk down "O" street from the opposite end that Melvin had went in on. I didint know were Melvin was, I didnt see him anywhere.

That then I saw Melvin on his hands and knees taking off his coat, and then he got up and tried to open up a vacant car door but it was locked.

That Melvin stood up and began to talk to someone in a jeep. That thats when Melvin open the back door and got in the back seat of the jeep.

That as soon as Melvin got in a woman got out and ran up some chuch steps, then the driver got out and stood beside the jeep. [his door was open the whole time Melvin was in the car]

That Melvin never pointed the gun at the back of the driver's head as I said the driver door was wide open and my view was perfect.

That Melvin got out of the car and stood in the street talking to the driver,. Melvin did have a gun in his hand but it was always pointed at the ground and never raised in a threatining manner towrds the driver or the passenger.

That the driver kept backing up, and Melvin reached into his pocket and pulled out some money as if he was trying to give it to the driver.

That Melvin ran off because the police were coming, and thats the last time I saw him that day, and that Melvin's back was to me the whole time and he never saw me standing less than [20 feet] away, directly behind him on the other side of the street.

That I didn't want to get into any trouble-or to get involved so I did not call out to Melvin .

That the reason that I never told Melvin that I witnessed the whole episode was because I didnt want to risk losing his friendship-I was afraid that I would if I told him that I just stood thire and watched it all without attempting to assist him with a ride out of there. I just froze.

That I just told him about this on December 21, 2006 and agreed to write this affidavit to what I witnessed on that day because I know that Melvin did not try to kidnap the people in the jeep, and I know Melvin did not put a gun to the back of the drivers head and no hostile activity occured.

That I was less than 25 feet away from Melvin and it was very early hours in the day.

That Mr. Dansie , Melvins lawyer told me and Thelma Thomas, Melvins Mother, Desiree Pitts (Melvins codefendant) and myself that If Melvin did not accept the plea then they both would be sentenced to up to life in prison because Desiree would be and aidder and abbetter

That Dancie went on to say that Melvin should accept the plea to attempt to kill/kidnap because he only shot the man in the hand, and he can gaurantee that Melvin would get only a 5 to 15 year sentence-and Desiree would get probation.

That Mr. Dansie told us this at one of the court appearences.

That Ms. Thomas and myself went to the jail to visit Melvin and told him what Mr. Dansie

had told us, and that Melvin told us to leave right then and there and go back to see
Mr. Dansie and get the ple agreement in writing.

That we went back to the court and the clerk called for Mr. Dancseie, that when he came
to the waiting room, we all went to his office and he gave Ms. Thomas a copy of the
Emergency Legislation act showing us where it says that the sentence would be only
5 to 15 years.

That I was not at Melvins guilty plea hearing so I did not know what Melvin had pled
guilty to, I had always believed that it was something to do with the shooting.

That I know the police changed the facts of the case-at least to the charge when he
got in the back of the mans car.

That Mr. Dansie knew how Melvin felt about his children growing up without Desiree, he
knew it was possible that he would be sent away for awhile because he did fire the gun.

That after Ms. Thomas died she gave me all of Melvins paper work,pictures and letters
in a box.

That Melvin has so much paper work at my house now-that when he ask me to find his birt
certificate -I looked thru every one of the boxes  and thats when I found the Emergency
Legeslation Act that Mr. Dansie had given Ms Thoams when I was with her. I found it on
June -06.

That I went to see him and told him that I have the document that Dansie gave us showing
that the sentence was supposed to be only 5-to-15 years.

That Melvin has been trying to prove his innocence for the last [18] years; and we have
all filed Freedom of Information Act request all over the country-hiered lawyers-hiered
private investigaters until we all went broke.

That we only did this because we knew Melvin was innocent, especially me. I knew for
sure. I was an am Melvins one and only available eyewitness.

That the cover up in this case is so deep that no one ever looked below the surface
area, that Melvin was misled by his lawyer and so were we all.

That Dansie also told Melvin and us all that if he attempted to pull back on his plea

that Desiree would be tried under the aiding and abetting and they both would be taken away from the children for up to life.

That Melvin always talks about how he was railroaded by the system because the crime he committed were not as serious as the government manufactured charges.

That Melvin is telling the truth-Melvin did not try to kill anyone, nor kidnap anyone.

I declare under the penalties of perjury that what I have stated in this affidavit is true and correct.

Jan. 4, 2007
DATE

Rose M. Wright
SIGNATURE

DOB 6-27-1958
SSI # 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
PLACE OF BIRTH Wash. D.C.

5420 Downing St. 9-B
Alexandria, LA. 71301

EXHIBIT 4

## AFFIDAVIT OF MELVIN E. THOMAS

**I, Melvin E. Thomas due hereby swear under the penalties of perjury
that the following is true and correct.**

1] **That** I entered a plea of guilty to assault with intent to kidnap while
armed, but I am actually innocent of the guilty plea.

2] That I did not attempt to kidnap Mr. Craige Field, although I did
get into his car without permission and told him that my mother had just
been shot and I asked him would he drive me to her and he got out of the
car and said no, we can walk to go see her I'm a Doctor.

3] That I did not shoot Mr. Terry Viands in the hand and he was only shot
because he was yanking and pulling on the gun from the outside of the
coats pocket while the other security gaurd had me in a choke hold with
my right arm twisted behind my back, Mr Viands other hand was holding
my left arm pushing it away from the coat pocket when the gun fired the
first shot struck Mr. Viands.

4] I never had my hand on the gun when it fired the first shot and Mr.
Viands was the cause of the gun fireing and strikeing his own hand.

5] That the reports done on my personal coat will prove my innocence, and
that the prosecuting unit decieved the Court and committed perjury and
fraud on the court.

6] That Terry Viands initial statement will also prove that I did not
shoot him, and he was not shot with the second shot fired as the prose-
cution claimed in Court and before the Grand Jury.

7] That Mr. Field initial staement will prove that I never put a gun to
the back of his head nor did I attempt to kidnap him.

8] That these reports and staements will prove that the prosecuting unit

committed perjury and fraud on the Court and withheld exculpatory evidence.

9] That the public interest will best be served by the release of the records because there release will show the public what it's government is up to and has been up to 18½ years ago.

10] That if the Court will hold an in camera review, the Defendants "bad faith" withholding of the records along with the perjury and the fraud on the court and the withholding of exculpatory evidence will be proven.

I, Melvin E. Thomas due state under the penalties of perjury that if the Court holds in camera review, the Court will see that the records I request can be segregated and or redacted and then could be released to me, an that the forgoing is true and correct.

DATE _April 20th 2007_

_Melvin E. Thomas_
(Signiture)

-END-

## AAFFIIDAVIT OF MELVIN E. THOMAS

I, Melvin E. Thomas, due hereby state under the penalties of perjury
that the following is true and correct to the best of my knowledg:

1] That I am actually innocent of the charge; assault with intent to kid-
nap while armed and also actually innocent of the caharge aasault with
intent to kill while armed.

2] That Desiree Pitts and Rose Wright went to Georgetown to eat with me.

3] That Desiree an I separated from Ms. Wright and Desiree and I went
into the store to shoplift.

4] That Desiree put a leather coat inside the baby bag while I talked to
the sales clerk.

5] That Desiree left the store while I was still talking to the clerk.

6] That when I came ouside Desiree was being hancuffed,

7] That as I began to approach two gaurds takled me to the ground and we
began to struggle, and I was able to get back up on my feet.

8] That one had me in a choke hold and he also had my right hand behind
back.

9] That the other one had his hand on the gun I had inside of my inside
coat pocket, and he was pulling on it an yanking downward to try and
stop me from removing it.

10] That the coat's pocket had a zipper on it which was closed, so Iwas
trying to get the zipper open , the gaurds other hand was pushing and
holding-stopping my left hand from getting the zipper open.

11] That the gaurd was very nervous and really pulling and yanking down
on the gun to stop me from getting it out.

12] That I never got the zipper open, and then the gun fired.

13] That it was a vicious struggle between the three of us.

14] That the guard caused the gun to fire while in a frenzy.

15] That I did not shoot Terry Viands in his hand.

16] That Terry Viands caused the gun to fire strikeing himself in the hand because of the way he way he was pulling-holding onto-and yanking the gun from the outside of the coat.

17] That the coat will contain a bullet hole in the upper right breast pocket (inside pocket) with an exit hole on the outer part of the coat.

18] That Terry Viands DNA would also be found on the coat.

19] That testing on the coat will also prove my innocence.

20] That th prosecuting unit changed the sequence of the shots as they were fired-from the first shot fired that struck Mr. Viands-to a claimed second shot after I pulled out the gun andfiered at him twice-missing with the first and hitting him with the second shot.

21] That my hand nor my finger never pulled or touched the trigger when Mr. Viands was shot, because the coats zipper pocket was still closed at the time he was shot.

22] That I did fire the gun after Mr. Viands and the othe guard released me, but I only fired at vacant cars and a wall trying to get out of there.

23] That I took off my coat and dropped it.

24] That I ran down the street to "O' street ducking very low under the car windows trying not to be seen, trying to open vacant parked car doors to try and find a place to hide.

25] That I came upon a jeep with two people in it, and I stood up. I did still have the gun in my hand, but I dont think It was seen.

26] That I told the driver that my mother had been shot and ask for a ride, his door was open as I open up the back door and got in his car, I still dont believe he saw the gun yet. He had told his wife to get out of the car which she did.

27] He turned around and saw the gun in my hand, and took the keys out,

and then got out the car himself.

28] That I got out too and told him that I would pay him for a ride but he said no, we can walk to see your mother I'm a doctor.

29] That he kept backing up an that the police sirends were getting close so I turned and ran off around the corner and was arrested in the back of an ally.

30] That I told him I'm not going to use this gun on you, calm down please, I'll give you $20 dollars for a ride.

31] That he kept saying don't shoot me , don't shoot me with his hands stretched out in front of him. That he was very nervous because he did see the gun in my hand when he turned around in the car and first saw the gun.

32] That I did not enter Mr. Fields car with the intent to kidnap him, I only asked for a ride, I was actually looking for a place to hide until I was seen by Mr. Fields.

33] That I never put a gun to the back of Mr. Fields head.

34] That my attorney told me that if I accept the plea that I would be sentenced to 5-to-15 years and Desiree would get probation.

35] That he also made it perfectly clear that if I did not take this plea then Desiree woul be tried with me and if I were found guilty the so would she as an aidder an abbetter, and she would recieve the same sentence or close to the one I recieved.

36] The next time I saw Mr. Dansie he had a copy of the Emergency legisl-ation Act that he had gave my mother and Rose. He then gave me a copy.

37] That Detective Goodrige and otrhers committed perjury and fraud on the court.

38] That because the police had changed the facts of the case and the withholding of exculpatory evidence by the prosecution unit and the fact that my counsel told me that Desiree would· be subject to the aidding and abbetting liabiltiy statute if we were convicted and that I would recieve

5-to-15 years , I pled guilty, becuase of the perjury and fraud on the
court, and an ineffective attorney, we were sure to lose at trial.
39] That that was a risk I couldn't take.
40] That I never knew that my attorney gave me materially false advice
until I read Wilson-Bey v. United States, a 2006 D.C.Court of Appeals
case on the aiding and abbetting statute.
41] The reason I didnt marshal this issue sooner is because I believed
counsel when he told me the Desiree could be convicted and senteced to a
substantial prison term under the aidding and abbetting liability statute,
and I had no reason to doubt his legal knowledge at that time.
42] Wilson-Bey made me dig deeper-think back more harder-search for more
facts an I found that even at the time of our case, Desiree could not have
been subject to the aidding and abbetting liability if we were to go to
trial and I was found guilty because she would have to posses certain mens
rea eliment of intent. See Arizona v. Mott, 187 Ariz. 536,931 P.2d 1046.
43] That of even more importance is the fact that Desiree was hancuffed
and in custody. So cousels advice was eroneous and misleading and materi-
ally false because Desiree was never in harms way or subject to aidding
and abbetting liability.
44] That trial counsel gave me materially false advice which in turn led
me to abandon my Constitutional Right to trail, because if counsel would
have given me correct advice on the proper legal standard for aidding and
abeetting clearing Desiree from the possibility of liability of the crime
that I was accused of, then I would not have entered this guilty plea and
would have insisted on going to trial.
45] That these are the facts that had coerced me into entering the plea.
46] That there is no reference in either the newspaper article, the orig-
inal complaints, tnor the preventive detention hearing that I put a gun

to the back of Mr. Fiels head and demended a ride.

47] That I am innocent of this charge.

48] That I make these statement under the penaties of perjury.

_____
(DATE)

_____
(SIGNATURE)

Melvin E. Thomas

M.T.

4-2007

EXHIBIT **5**

UNITED STATES
VS

# MELVIN E. THOMAS

On 12-27-89, W-1 and W-2 received information that two subjects were in the process of committing a theft at Britches Great Outdoors located at 1357 Wisc. Ave. N.W. W-1 and W-2 are employed at Britches Great Outdoor as security officers. Upon arriving at the scene W-1 observed the def. struggling with W-3. W-1 who had arrested the def. previously on a separate occasion grabbed the def. W-2 also grabbed the def. as they struggled with the def. in front of 1357 Wisc. Ave. N.W. There came a time when the def. produced a handgun and shot W-1 in his right hand. At this point W-1 let go of the def. along with W-2 and the def. fired off at least three rounds at W-1 and W-2. W-1 and W-2 took cover behind a car as the def. fired another round at the witnesses. The def. then point the gun at the witnesses as he backed across Wisc. Ave. W-2 stated that he observed the def. fire one more round and then saw him stand on the northwest corner of Wisc. Ave. & O St. N.W. and point the gun in the direction of the witnesses.

The def. then gun went on O St. N.W. from Wisc. Ave. N.W. and was observed by a witness to be trying to gain entry into several vehicles in an attempt to make good his escape. At this point the def. came upon W-4 and told this witness that his mother had been shot so drive him down the street. W-4 told the def. no and the def. jumped into his auto pointed the gun at W-4. W-4 exited his vehicle and tried to hide underneath his auto as the def. followed W-4 and continued to point the gun at W-4. The def. then ran down (east) on the 3200 block of O St. N.W. and was pursued by Officer Sullivan who was advised by a citizen that a shooting had just taken place in the 1300 block of Wisc. Ave. N.W. Officer Sullivan gave chase and captured the def. in the R/O 3250 O St. N.W.

The def. was returned to the scene of the offense was a show-up identification was conducted by Det. David M. Goodridge and the def. was positively identified by W-1, 2, 3 and 4. Several other witnesses also positively identified the def. as the subject that shot W-1.

Subscribed and sworn before me this 28th day of DEC

David M. Goodridge   1035
POLICE OFFICER      BADGE                    DEPUTY CLERK

# EXHIBIT 6

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION - FELONY BRANCH

JAN 25   2 34 PH '90

FILED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. F-14491-89 |
| v. | : | Judge Bruce D. Beaudin for Judge Robert M. Scott |
| MELVIN THOMAS | : | Status Hearing: 1-30-90 |

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND ORDER OF DETENTION PENDING TRIAL

The defendant, Melvin Thomas, came before the Court on December 29, 1989, upon the motion of the United States to hold the defendant without bond pending his trial in sixty days pursuant to 23 D.C. Code § 1322(a)(2)(i). Having heard testimony from Detective Goodrich, the government's proffer of the defendant's prior record and indicia of dangerousness, the report and recommendation of the Pretrial Services Agency, and the arguments of counsel for the United States and the defendant in accord with 23 D.C. Code § 1322(b)(3), the Court makes the following findings of fact and conclusions of law:

1.     There is clear and convincing evidence that the defendant is charged with Assault with Intent to Kill While Armed, a crime of violence as defined by 23 D.C. Code § 1331(4), and that defendant was charged with that offense after conviction of three crimes of violence in the District of Columbia for Assault with Intent to Rob, Attempted Robbery and Assault with a Dangerous Weapon. 23 D.C. Code § 1322(b)(2)(A).

2.   There is a substantial probability that the defendant committed the offense for which he is before the Court.  23 D.C. Code § 1322(b)(2)(C).   The government's evidence at the preventive detention hearing showed that on December 27, 1989, in the early afternoon, two security officers employed by Britches Great Outdoors Clothing Store responded to a call by a third security officer at the Britches store located at 1357 Wisconsin Avenue, Northwest for a shoplifting in progress.   When they arrived at the front of the store, they were directed to apprehend a female, later identified as Desiree Pitts, who was observed departing the Britches store after placing a suede jacket, valued at $650.00, into a canvas bag.  Upon their arrival at the store, the two officers observed the female, co-defendant Pitts, and the security officer who broadcast the call for assistance outside of the store.  Within seconds, a male who had entered the store with defendant Pitts, exited the store and approached the officer attempting to apprehend Pitts.   The two security officers who had responded approached the male, later identified as defendant Melvin Thomas, and attempted to apprehend him for his participation in the theft of the coat.  Defendant Thomas resisted arrest and, while the two officers attempted to handcuff him, Thomas pulled a loaded handgun from his waistband, fired one shot, which did not take effect.  Defendant then fired a second which hit the officer's hand.  As the officers scrambled for safety, defendant was observed firing two additional rounds in their direction, and a fifth round was discharged after defendant crossed Wisconsin Avenue in an attempt to escape.

Defendant Thomas then ran west on O Street and was observed attempting to enter several parked vehicles. One of the vehicles was occupied by two individuals. The defendant requested a ride from the driver who refused him. Defendant then entered the vehicle, brandished his weapon and demanded that the driver comply with his request for a ride. Both individuals in the car jumped out of the vehicle. The defendant exited the car, and followed the driver who was attempting to take cover under the automobile. When defendant's threats with his handgun did not move the driver to comply, defendant ran west on the 3200 block of O Street. Defendant was ultimately apprehended behind a home. Defendant's handgun and coat, which were both discarded during his attempt to escape, were recovered. The defendant was returned to the Britches store, and was positively identified by the employees. He was also positively identified by the victims who defendant had either threatened or shot.[1] The coat taken from the store was recovered from co-defendant Pitts.

3. Based upon the factors set forth in 23 D.C. Code § 1321(b), there is no condition of combination of conditions that will reasonably assure the safety of the community or any person. 23 D.C. Code § 1322(b)(2)(B)(ii). The offense with which defendant is now charged is a crime of violence. 23 D.C. Code § 1331(4). Moreover, it was committed within ten years after

_____

[1] Detective Goodrich testified that the security officer who was actually injured in the shooting had seen defendant Thomas on a prior occasion when he was apprehended for a theft at that same location.

defendant was convicted of Assault with Intent to Rob, Attempted Robbery and Assault with a Dangerous Weapon, crimes of violence as defined by D.C. § 1331(4).

WHEREFORE, having considered the provisions of 23 D.C. Code § 1322 and factors set out in the 23 D.C. Code § 1321(b), the Court concludes there is no condition or combination of conditions of release that will reasonably assure the safety of any person or the community.

Therefore, it is this 25th day of January, 1990,

ORDERED, that the defendant will be held without bond for not more than sixty days from December 28, 1990, pending the trial of this matter.

_1-25-90_
DATE

_Bruce D. Beaudin_
JUDGE BRUCE D. BEAUDIN

cc: Heidi M. Pasichow
Assistant U.S. Attorney
Chronic Offender Unit, Room 3812

William Dansie, Esquire
601 Indiana Avenue, N.W., 9th Floor
Washington, D.C. 20004

EXHIBIT 7

# Store Guard

CHASE, From D1

woman, pushing a baby boy in a stroller, came into the upscale clothing store. About 20 other people were in the store, witnesses said.

A Britches employee saw the woman trying to take an orange coat made of fine [...] a type of sheepskin, out of the store. Wiseman said. The woman then ran out of the store, and the guard grabbed and handcuffed her.

Her male companion ran out and then inserted store security guards [...]

# Gunshots Scatter Crowd In Georgetown

## Shoplifting Attempt Leaves 1 Wounded

### By San Horwitz
Washington Post Staff Writer

Shoppers in Georgetown yesterday watched a startling scene unfold as a man fleeing security guards in a clothing store shot one guard, fired a few shots, and tried to commandeer a Jeep.

"Shots were going everywhere" on crowded Wisconsin Avenue NW, Capt. Dewey Wiseman of the 2nd Police District said.

The man with the handgun had been involved in an attempted theft of an expensive coat at the Britches Great Outdoors for Women store, police said. Security guards confronted the man on the sidewalk outside the store, and wrestled him to the ground, police said.

The man then shot one of the security guards in the hand, fired in the direction of a bystander but hit a car window, and continued shooting. He ran down Wisconsin Avenue, then went on O Street, where he jumped into the parked Jeep, telling the owner that his mother had been shot.

When the driver — coincidentally an emergency room doctor — offered to help, the man pulled out his handgun again, police said. The doctor and his wife escaped from the car, and the gunman also fled.

Police later arrested Melvin Thomas, 40, of the 6200 block of Banks Place NE, and charged him with assault with intent to kill in connection with the shooting. Police also charged [him] under D.C. Code Title 22, of the 700 block of O Street NW with theft for allegedly shoplifting a $650 coat from the store, at 1457 Wisconsin Ave NW.

The wounded security guard was listed in good condition at Georgetown University Hospital, where he was in surgery last night.

No bystanders were injured. Bullets from a .38-caliber weapon shattered the rear window of one car parked on Wisconsin Avenue, lodged in the front window of another and punctured one of its tires.

Wiseman said the incident began

# Wounded in Shooting in Georgetown

[...] crowd of people as a street corner watching people as a street corner find her. Hernandez said. The [...] men. Hernandez said between the car over and started toward the group to help.

Then Hernandez saw a man shoot one of the security guards. Shot on foot along the 3200 block of O [...]

"I was trying to help." Hernandez said. "It was about anyone with a gun. . . it was just like a shift driving toward Wisconsin [...]

Her male companion ran out and fired toward him, just as he ducked between two cars.

As Freed pulled his Jeep over my head, Freed went right over my head. he said. [...] the window behind [...] the rear window of a Pontiac Grand [...] Wisconsin and O streets NW.

The gunman fired two other shots that [...] security car, Wiseman said. [...] who was shopping inside a [...]

nearby jewelry store, came outside to find her. Her first shot came at a [...] helped inside her front seat and a bullet [...]

A witness said the gunman then fired into the street. Craig Freed, [...] driving down, said he tried to stop cars [...] an emergency room doctor at George Washington University, who was driving toward Wisconsin Avenue with his wife, Julie, to do some Christmas shopping.

Freed said the man approached on O Street, put a pistol in the car [...]

gun, Freed said. The doctor said he screamed at his wife to get out of the car, and she ran up the steps of a nearby church. Freed said he then pulled out the keys out of the ignition and said [...]

"My first thought was I hope he doesn't hit me anywhere that's final," said the doctor.

The gunman, apparently frustrated, jumped out of the Jeep and ran toward another vehicle, which several [...] witnessing him. He then [...] continued pressing [...] to the Potomac Street, where before he [...] hended him. The baby was [...] the police youth services division.

Hernandez, the man who tried to help the security guards, said he fled the area. "I brought a magazine in the trunk," he said. "I had to think about it," he said. "It has become more dangerous to live in Georgetown."

A D.C. officer takes away a handgun used by a gunman arrested in attempted [...]

# Potomac

[...] the shop and pulled him out [...] both to the Smithsonian [...] were dried and warmed [...] round like two. [...] Portofino said an hour [...] he is looking at larger [...] held undersized. WA

[...] to be a Society of Georgia [...] one Veterinarian and host [...] the Arlington Animal Welfare [...] a Good Samaritan and [...] WA spokesman Donald [...]

D06, D1, Col. 2

# ng to N.Va.

[...] rights. In layman's terms, [...] rights are privileges guaranteed to all landowners that govern [...] count take away. Any [...] development industry wants [...] and more privileges to land-[...] and reduce the role of government in determining how property is used.

[...] ger W. Snyder, chief executive [...] Northern Virginia Building

# EXHIBIT 8

1    MS. PASICHOW:  -- he's pleading guilty to.

2    THE COURT:  Yeah.

3    MS. PASICHOW:  The 6th is the carrying a pistol

4    without a license.

5    THE COURT:  Yes.

6    MS. PASICHOW:  And the 7th is possession of a

7    firearm during the commission of a crime of violence or

8    dangerous crime.

9    THE COURT:  Uh-huh.

10    MS. PASICHOW:  The Government is also waiving life

11    papers.  Mr. Thomas has three prior felony convictions.

12    THE COURT:  Any others?

13    MS. PASICHOW:  No, Your Honor.

14              EXAMINATION BY THE COURT

15    Q    how old are you, Mr. Thomas?

16    A    Twenty-eight.

17    Q    Where were you born, please?

18    A    Washington, D.C.

19    Q    It is my understanding that you want to plead guilty

20    to the charge that you assaulted a man named Craig Feid

21    P-h-e-i-d on December 27, 1989 with the intent to kidnap him.

22    That is, to deprive him of his freedom of movement while you

23    were armed with a dangerous weapon, that is gun.  Is that

24    correct?

25    A    Yes, sir.

21

1    Q    The Government said if you enter that plea of

2    guilty, it will dismiss the charge of first-degree theft which

3    relates to stealing property from a place called Britches out

4    in Georgetown.

5         It will dismiss the charge of assault with intent to

6    kill a person while armed with a gun.  It will dismiss another

7    charge of assault with a dangerous weapon, that is that you

8    shot somebody or shot at somebody while armed with a pistol.

9    There are two of those charges of assault with a dangerous

10   weapon, they'll dismiss both those.

11        They'll dismiss the charge of carrying a pistol

12   without a license and it will dismiss the charge that you

13   possessed a firearm during the commission of a crime of

14   violence.  That is, during a kidnapping or -- yeah.

15        Moreover, they will not file life papers.  You've

16   been convicted three times previously of felony charges.  If

17   they were to file those life papers, I could lock you up for

18   life.  However, I can still lock you up for life on the charge

19   of assault with intent to kidnap while armed with a dangerous

20   weapon.  Do you understand that?

21   A    Yes, sir.

22   Q    All right.  Other than those promises that I've just

23   mentioned about the dismissal of the various charges against

24   you, all relating to December 27, 1989, and the waiver of life

25   papers, do you know of any other promises that have been made

1    to you by anybody including Mr. Dansie, your attorney --

2       A    No.

3       Q    -- that had entered into your decision to plead

4    guilty to the charge of assault with intent to kidnap while

5    armed with a dangerous weapon, a gun?

6       A    No.

7       Q    Has anybody in any way threatened you to cause you

8    to enter these pleas, this plea of guilty?

9       A    No, sir.

10      Q    Has anybody told you that you're gonna get an easy

11   sentence or be put on probation because you entered this plea

12   of guilty?

13      A    No, sir.

14      Q    And are you aware, as I have just told you, that if

15   I accept this plea of guilty, I can lock you up for a period

16   of 15 years minimum before you'd be eligible for parole until

17   your life?

18      A    Yes, sir.

19      Q    Knowing that, do you still wish to enter this plea

20   of guilty?

21      A    Yes, sir.

22          THE COURT:  Before I proceed further, Ms. Pasichow,

23   state what the Government would intend to prove were the

24   matter to go to trial.

25          MS. PASICHOW:  Your Honor, if this case has gone to

1    trial, the Government's evidence would show that on December

2    27, 1989, sometime after one o'clock in the afternoon, Mr.

3    Thomas, along with an individual by the name of Ms. Pitts who

4    had already, who has already pled guilty to a shoplifting --

5              THE COURT:  Yeah.

6              MS.  PASICHOW:  -- before Your Honor, entered the

7    Britches Great Outdoors located at 1357 Wisconsin Avenue,

8    Northwest.  At some point a coat was taken from the racks, was

9    placed in a bag and was taken out of the store.  That was a

10   leather jacket with a value of about $650.  That was observed

11   by special police officer.

12             She witnessed Mr. Thomas' involvement in that theft,

13   followed the female out.  She, the female had exited, that Ms.

14   Pitts exited the store first.  She went to apprehend Ms.

15   Pitts, and in the process of doing so, went to apprehend as

16   well Mr. Thomas for his participation.

17             At that time she was joined by two special police

18   officers because there was a call for help for assistance.

19   The police officers attempted to apprehend Mr. Thomas by

20   placing his hands behind his back and handcuffing him.

21             At some point during the apprehension Mr. Thomas

22   took the gun from his jacket or waistband area.  It was a, it

23   was a loaded five-shot revolver.  He fired once and he fired

24   the second time. [ That second bullet hit one of the special

25   police officers in the hand. ] They ran for cover.

9

1    Mr. Thomas was observed firing at them. They were

2    they were hiding behind the parked car located right in front

3    of the Britches. That was observed by an eyewitness. Then

4    Mr. Thomas ran across the street and ran to, toward O Street,

5    Northwest. That is between Potomac Avenue and Wisconsin

6    Avenue in Northwest, Washington, D.C.

7        He was observed fire, he was observed and heard

8    firing at least one additional round which would have been

9    five, approximately five all told. While en route on O Street

10   Mr. Thomas was observed trying to get into various cars parked

11   along the way and finally confronted Mr. Feid, who was in a

12   parked vehicle with his wife.

13       When he did so he, he got to the car. He tried the

14   front door and then successfully got in the back of the jeep.

15   It was a jeep Cherokee. At which point he told Mr. Feid that,

16   that they shot his mother and he wanted him to drive, that is

17   Mr. Feid to drive Mr. Thomas to a particular location.

18       And Mr. Feid indicated he was a doctor, that he

19   would help him but he would do so on foot. Not being

20   satisfied with that Mr. Thomas then brandished the gun, the

21   pistol he had, held it to Mr. Feid's head and demanded that he

22   start the car.

23       Mr. Feid, Dr. Feid told his wife to get out of the

24   jeep; she did get out. Dr. Feid, having experience in

25   emergency medicine, kept telling Mr. Thomas not to shoot him,

10

1   not to shoot him.  He was able to get out in one side of the

2   jeep.  Taking the keys with him, Mr. Thomas then left the jeep

3   and ran toward a passing cab.

4          That cabdriver noticed that Mr. Thomas had a gun.

5   He also observed the earlier shooting and he was able to

6   direct the police to the location where he saw Mr. Thomas run

7   to.  In the process, Mr. Thomas shed a coat in the 1300 block

8   of Potomac Avenue.  That coat was recovered and he was

9   apprehended behind 3250 O Street, Northwest where the gun was

10  recovered as well.

11         BY THE COURT:

12     Q    How about that, Mr. Thomas?

13     A    Yes, sir.

14     Q    That's all, that did happen?  You got in that man's

15  Cherokee and pulled a gun on him?

16     A    Yes, sir.

17     Q    All right.  Mr. Thomas, let me tell you certain

18  rights you're giving up by entering this plea of guilty, so if

19  you want to change your mind you can.

20         Instead of pleading this guil, guilty to this charge

21  that you assaulted Dr. Feid while armed with a dangerous

22  weapon with the intent to kidnap, and that is to detain him

23  and to make him do something against his will, deprive him of

24  his freedom of movement, you have the right to have a trial on

25  that charge and have a jury determine whether you are guilty

11

1    charge by a jury.

2            Nevertheless, at your trial, you would have the

3    right to call as witnesses in your behalf any persons that

4    either you or Mr. Dansie thought could come down and

5    truthfully testify to show that he did not commit the crime or

6    crimes with which you're charged.

7            And in that connection, you'd have the right to

8    testify at that trial in your own behalf, but you would also

9    have the right not to testify. And if you elected not to

10   testify, the jury couldn't find you guilty of any charge

11   simply because of the fact you did not testify.

12           And the reason for that is that under our system of

13   law, every person who is charged with having committed a crime

14   has the absolute right not to testify in his trial. The judge

15   informs the jury that the defendant has that right and the

16   judge then instructs the jury that it may not draw any

17   unfavorable inference or conclusions against the defendant

18   because he exercised his right not to testify.

19           Now in the event the jury were to find you guilty of

20   the charge of assault with intent to kidnap Dr. Feid while

21   armed with a dangerous weapon, a gun, or any of the other

22   charges, you would have the right to appeal that or those

23   verdicts to the District of Columbia Court of Appeals. You

24   would there be represented by an attorney.

25           Now let me tell you what happens there. As I say,

1  you would be represented by an attorney, and if you couldn't
2  afford to hire one, the Court would appoint one to represent
3  you on that appeal without charge.
4          And on that appeal you can raise any matter that
5  either you or the attorney thought had been wrong during the
6  trial of the case that resulted in your being found guilty.
7  If I accept this plea of guilty to the charge of assault with
8  intent to kidnap Dr. Feid while armed with a dangerous weapon,
9  a gun, you will be giving up all the rights that I have just
10 told you have.  Do you understand that?
11      A    Yes, sir.
12      Q    I ask you now, is it your own personal desire after
13 having talked the matter over fully with your attorney to give
14 up all those rights and instead to enter this one plea of
15 guilty?
16      A    Yes, it is.
17      Q    Is that what you want to do?
18      A    Yes, sir.
19      THE COURT:  Having heard you acknowledge the truth
20 of your participation with Dr. Feid in that holding the gun on
21 him and detaining him, the Court accepts that plea of guilty.
22      MS. PASICHOW:  Your Honor, if I could just state,
23 which I forgot to state in the proffer, there is, there was a
24 motion filed by Mr. Dansie regarding the suppression of the
25 identification.

1    THE COURT:  Yeah, I know.

2    MS. PASICHOW:  And the Government filed an

3    opposition --

4    THE COURT:  I know.

5    MS. PASICHOW:  -- but I didn't indicate that there

6    were, there was an identification made of Mr. Thomas on, at a

7    show-up by that particular victim --

8    THE COURT:  Yeah.

9    MS. PASICHOW:  -- and by 6, 7 additional people.

10   But that motion at this point is moot.

11   THE COURT:  That motion is down the drain because he

12   pled guilty.

13   MS. PASICHOW:  Thank you.

14   THE COURT:  All right.

15   MR. DANSIE:  In that same regard, Your Honor, I do

16   certainly agree that Mr., Mr. Thomas has been able to fully

17   and completely assist me.  I've explained to him the

18   photographs, all the various evidence that's been available

19   and, and he's found the factual basis for those plea.  I --

20   THE COURT:  That's all I'm interested in is whether

21   he wishes to plead guilty and whether he admits that he did

22   it, and he has admitted it.

23   MR. DANSIE:  Perhaps that's the most important

24   aspect of this, Your Honor, indeed he does.

25   THE COURT:  That's what he's told me he did.  He's

EXHIBIT 9



UNITED STATES GOVERNMENT

# memorandum

FEDERAL BUREAU OF PRISONS
United States Penitentiary
Pollock, Louisiana

October 5, 2005

MEMORANDUM FOR R. ANDERSON, CASE MANAGER
               A UNIT TEAM

FROM:         R. Cosgro, CMC

SUBJECT:      U. S. Parole Commission Hearing Recommendation
                Melvin Thomas
                Reg. No.: 03584-000

The purpose of this memorandum is to provide input for the upcoming parole hearing of the above-named inmate.

Inmate Thomas came into the District of Columbia, Lorton prison system as a DC Superior court commitment. He was sentenced on September 12, 1990, to a DC GTCA Adult Sentence with a minimum term of fifteen years and a maximum term of Life. While it is obvious that he came into the Federal system and received incident reports for the first few years; it is also obvious that he has chosen to take a different path. In 2003, he received his last incident report and since that date has made a concerted effort to program and prepare himself for his release.

Beginning in 2003, he has enrolled in and completed 112 hours of Adult Continuing Education courses. He has also completed the following Release Preparation Program courses:

Prison to Paycheck    14 hours
Stress Less           7 hours
Small Business Class 34 hours
Breaking Barriers    15 hours
Cage Your Rage     12 hours
Living Free         6 hours

Inmate Thomas enrolled in the CODE Program and has participated and continues to participate in groups and courses which have led to a new outlook and a positive approach to his daily goals and

more importantly his future plans for reentry into the community. Along with completing numerous groups and counseling courses for self improvement he has taken it upon himself to become better prepared and marketable by completing the Vocational Training courses for Introduction to Computing, Computer Keyboarding, Microsoft Word, Microsoft Excel, Microsoft Access, and 222 hours in Microcomputer Applications. This extensive preparation is evidence of his desire to make life changes necessary for his reentry and be better able to deal with situations he will encounter upon returning to society.

He maintains contact in the community and currently has a fiancee who he plans to marry in the near future. His approach when dealing with staff is positive and he has a good rapport and respectful attitude when discussing issues relevant to his situation. It is my belief that he has exhibited Superior Program Achievement and warrants all due consideration.

**LIMITED OFFICIAL USE**



# Federal Bureau of Prisons
# Psychology Data System

**Date-Title:** 07-25-2006 - Eval/Rpt - Treatment Summary

**Reg Number-Name:** 03584-000 - THOMAS, MELVIN E.   **Unit:** IV

**Author:** JOHN R. MITCHELL, CH PSYCH

**Institution:** ALP - ALLENWOOD USP

REASON FOR REFERRAL: Inmate Thomas is scheduled to see the Parole Board. This report is to provide a summary of the treatment programs he has been involved in.

TREATMENT SUMMARY: Thomas has completed a number of rehabilitative and self-improvement courses. He just recently completed the C.O.D.E. (Challenge, Opportunity, Discipline, and Ethics) Program in June, 2006. The CODE Program is a year-long residential treatment program that assists inmates in changing criminal thinking, emotion management, developing victim empathy, addressing addictive behaviors, improving communication and relationship skills, and preparing for release. Mr. Thomas began the CODE Program at USP Pollock and was able to complete the program here at Allenwood. He has also completed the CODE Aftercare Program here at Allenwood. Most recently, Thomas completed the CHOICES Program here at Allenwood, a therapy group in which inmates examine criminal behaviors and patterns, and learn more prosocial attitudes and behaviors.

Thomas has also completed several counseling groups during his recent years. These include Effective Alternatives, a positive mental attitude program; Living Free Values, a values-clarification group; Parenting Skills; Problem-Solving, a group that helps inmates improve decision-making and rational thinking; Anger Management (in two separate time periods); Living Free; Stress-Less, a stress management group; Cage Your Rage, a structured anger management course; and Breaking Barriers, a pre-release program. As one can see, Thomas has completed virtually every established BOP counseling group that is typically offered in a penitentiary setting, and he has been willing to take certain courses (e.g., Anger Management) more than once.

Thomas has taken a high number and wide variety of educational classes. He has completed all of the following: Real Estate; Conversational Spanish; History of Ancient Egypt; World Geography; American Government; Introduction to Computers; 20th Century History; Modern Marvels; Color of War; Countries of the World; Small Business Management; Lost Civilizations; Prison to Paycheck (I); and Nature's Assassins. Additionally, he has completed vocational training in Keyboarding, Microcomputer Applications, and Office Systems Technology.

SUMMARY: It is clear from Thomas' records that he has completed a high volume and wide variety of rehabilitation and self-improvement programs. He has also chosen to go through certain programs, like anger management, on more than one occasion, which shows a good desire to gain mastery over important skills.

If Thomas is granted release, he should receive more intensive pre-release preparation, while continuing counseling programs that will assist him with reintegration into society and a furthering of the life skills he will need to succeed.

**LIMITED OFFICIAL USE**

EXHIBIT 10



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## WASHINGTON, DC

March 11, 2004

Rose M. Wright
5428 Downing Street, 9-B
Alexandria, LA 71301

      Re:    Freedom of Information Act Request

Dear Mr. Thomas:

    The Chief Judge's chambers is in receipt of your request for information related to the case of *United States v. Melvin E. Thomas*, F14491-89. The Court is not in possession of, and as far as I can tell, has never been in possession of the documents you request. I forwarded your materials to the Metropolitan Police Department's General Counsel's Office.

                    Sincerely,

                    Aaron Knights, Law Clerk
                    The Chambers of Chief Judge Rufus G. King, III

Copy:

Terrence Ryan, Esq.
General Counsel, Metropolitan Police Department

## FREEDOM OF INFORMATION ACT REQUEST

Date: Feb 6, 04

Name of Agency: 2nd District MPD

Address: 3320 Idaho Ave N.W

City/State/Zip: Washington, DC. 20007

Dear Sir or Madam:

This is a request under the Freedom of Information Act as amended (USC Title 5 §552) in conjunction with the Privacy Act (USC Title 5 §552a).

I am writing to request a copy of the following information: Statements made by witness: a Vaughn Index on the Statements, and on the condition of the clothing taken from Melvin Thomas on 12/27/89 mainly and "overcoat" with a bullet hole in the coat; photo's of the coat, if any were taken - The Statement's of Terry Viands, Craige Field, Ms. Field, and Desiree Pitts are the Most Requested at this time

The FOIA also provides that if only portions of a file are exempted from release, the remainder must be released. I therefore request that I be provided with all nonexempt portions which are reasonably segregate. I, of course, reserve my right to appeal the withholding of deletion of any information.

If you have any questions regarding this request, please write me at the below caption address.

As provided in the Freedom of Information Act, I will expect to receive a reply within ten working days. ( Affidavitt of Melvin Thomas is attached )

Sincerely Requested,

Rose M. Wright
(Name)
5408 Downing St #9-B
Alexandria, LA 71301
Social Security # 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
Date of Birth — June 27, 1958
Place of Birth — Wash. DC

Signed before me, that are
on day for the oral, LA
for these 6th day of February, 2004

[signature]

## FREEDOM OF INFORMATION ACT REQUEST

Date: _Feb 6, 04_

Name of Agency: _Federal Bureau Investigation (FBI)_

Address: _9th and Pennsylvania Ave NW, Room #3077 or #2058_

City/State/Zip: _Washington D.C. 20001_

Dear Sir or Madam:

This is a request under the Freedom of Information Act as amended (USC Title 5 §552) in conjunction with the Privacy Act (USC Title 5 §552a).

I am writing to request a copy of the following information: _( Ballistic report on coat )_
_Report's that may have been done on MELVIN THOMAS' coat on or after his arrest on 12/27/89 by Second District MPD 3320 Idaho Ave. N.W._

The FOIA also provides that if only portions of a file are exempted from release, the remainder must be released. I therefore request that I be provided with all nonexempt portions which are reasonably segregate. I, of course, reserve my right to appeal the withholding of deletion of any information.

If you have any questions regarding this request, please write me at the below caption address.

As provided in the Freedom of Information Act, I will expect to receive a reply within ten working days. _( Affidavitt of MELVIN THOMAS is attached )_

Sincerely Requested,

_Rose M. Wright_
(Name)
_Rose M. Wright_
_5428 Downing St #9-B_
_Alexandria, LA 71307_
_Social Security — 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_
_Date of Birth — June 27, 1958_
_Place of Birth — Wash. D.C._

_Signed by me notary_
_for Baptiste Parish_
_Louisiana on this_
_21 day of February, 200X_
_[signature]_

## FREEDOM OF INFORMATION ACT REQUEST

Date: Feb. 6, 04

Name of Agency: US Department of Justice

Address: 555 Fourth ST. N.W.

City/State/Zip: Washington, D.C. 20001

Dear Sir or Madam: BIANE A. Workie, Special Ass - U.S. ATTORNEY

This is a request under the Freedom of Information Act as amended (USC Title 5 §552) in conjunction with the Privacy Act (USC Title 5 §552a). I request information in the Case of MELVIN E. Thomas #F14491-89. He was arrested at 2d Dist. MPD I am writing to request a copy of the following information: The following statements made to 2d Distract MPD at 3320 Idaho Ave NW on 12-27-89 by: Mr. Terry Viands / Mr Craige field / Mrs. Field and any other witnesses statements to the Criminal arrest of MELVIN E. Thomas.

The FOIA also provides that if only portions of a file are exempted from release, the remainder must be released. I therefore request that I be provided with all nonexempt portions which are reasonably segregate. I, of course, reserve my right to appeal the withholding of deletion of any information.

If you have any questions regarding this request, please write me at the below caption address.

As provided in the Freedom of Information Act, I will expect to receive a reply within ten working days. (Affidavit of MELVIN Thomas is attached )

Sincerely Requested,

Rose M. Wright
(Name)
Rose M. Wright
5428 Downing St #9-B
Alexandria, LA 71301
Social Security - 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
Date of Birth — June 27, 1958
Place of Birth — Wash. DC

Found there not any record for Alexdes Purole La. on 2/06/dec

# FREEDOM OF INFORMATION ACT REQUEST

Date: Feb 6, 04

Name of Agency: D.C. Board of Professional Responsibility

Address: 515 5th ST. NW

City/State/Zip: Washington, D.C. 20001

Dear Sir or Madam: Ms. Elizabeth J. Branda,

United States
vs.
MELVIN E. Thomas
F14491-89

This is a request under the Freedom of Information Act as amended (USC Title 5 §552) in conjunction with the Privacy Act (USC Title 5 §552a).

I am writing to request a copy of the following information: Brady and Jenks Material: Statements made to 2nd District MPD on 12-27-89 by Terry Viands- Craig field - mrs. field- Desiree Potts, and Police Report and any reports done on The Coat Taken as Evidence from MELVIN Thomas which had a bullet hole in the inside Coat pocket. Thomas' Lawyer Refused to turn this information over during and after this case to Thomas or myself when I requested it.

The FOIA also provides that if only portions of a file are exempted from release, the remainder must be released. I therefore request that I be provided with all nonexempt portions which are reasonably segregate. I, of course, reserve my right to appeal the withholding of deletion of any information.

If you have any questions regarding this request, please write me at the below caption address.

As provided in the Freedom of Information Act, I will expect to receive a reply within ten working days. (Affidavitt of Melvin Thomas attached)

Sincerely Requested,

Rose M. Wright
(Name)

Rose M. Wright
5428 Downing St #9-B
Alexandria, LA 71301
Social Security # 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
Date of Birth — June 27, 1958
Place of Birth — Wash. DC

<u>Affidavitt of Melvin E. Thomas</u>

I, MELVIN E. Thomas, hereby State as follows:

1. That I am innocent of the Charge of Assault w/I to kill w/A and Assault w/I to kidnap w/A #14491-89.

2. That I have given Prose M. Wright authority to help prove my innocence by allowing her to request "Statements and any <u>other evidence</u>" thru Freedom Of Information and Privacy act.

3. That every since the denial of my appeal in Oct. 2000 I have been diligent in trying to obtain Statements of Terry Viands and Craige Field made at 2nd District MPD on "<u>12-27-89</u>", to no Avail; and also, Grand Jury Testimony, or, the report that was done on "my Coat which has a bullet hole on the inside coat pocket."

4. That any, and all of this evidence will prove My innocence.

5. I Certify under penalty of perjury that the foregoing is true and Correct and as to the

STaTements and evidence being sought
on my understanding of the events that
took place on 12-27-89, I believe they can
prove My innocence.

Executed this 29th
Day of January 2004
Melvin E. Thomas
MELViN E ThomAS
#03584-000

Address :    USP Pollock
P.O.Box 2099
Pollock, L A. 71467

Date of Birth-12-11-61
Place of Birth-Wash.DC
Social Security #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
Criminal Case #F14491-89

Signature Melvin E. Thomas

( 2 )

EXHIBIT **11**

# DAVIS INVESTIGATIVE SERVICES, LLC
## P.O. Box 1393
## Waldorf, Md. 20604-1393
### CLIENT RETAINER AGREEMENT:

This Agreement, made this _10_ of _Dec,_ 2003, between, _Rose Wright_ _____hereinafter known as the Client and **Davis Investigative Services, LLC** hereinafter known as the "INVESTIGATOR," witness:

(1) **Client** retains the **Investigator** for the investigation/surveillance or other services in the matter of _Melvin E. Thomas_ _____

(2) **Client** agrees that the **Investigator** is empowered to perform said services for and on behalf of the **Client,** and to do all things necessary, appropriate and within the limits of the law or advisable in performing said services.

(3) **Investigator** agrees to conduct this investigation with due diligence to protect the interests of the **Client,** and agrees that whatever information is obtained while conducting the investigation/surveillance will only be given to the **Client.**

(4) **Client** agrees to pay Investigator a non-refundable retainer of **$1500.00.** The hourly rate shall be billed at **$75.00 per hour,** plus **$ .55 per mile,** and other expenses necessary to complete the assignment including each additional investigator needed to complete the assignment. All surveillances will be billed at a minimum of four hours per assignment. All conferences requested by the Client after the initial conference will be billed at the normal investigative rate. The time for preparing the report will be billed at the normal investigative rate.

(5) If the **Client** requests suspension or termination of the services of the **Investigator,** it is agreed by the **Client** that any balance of the retainer shall remain the property of the **Investigator** and any balance owed to the **Investigator** shall become due immediately.

(6) **Client** further agrees that all testimony will be billed at the appropriate investigative rate with an additional retainer of **$ 400.00** paid in advance of any testimony. Said amount will be paid regardless of the fact that it may entail waiting or standby time. **Client** further agrees that no court order will be issued up on the **Investigator** unless payment is paid as agree and within 24 hours of court appearance.

(7) It is agreed that the **Investigator** has made no guarantee or promise to the **Client** as to the results regarding the above stated matter.

(8) **Client** further agrees that all monies owed to the **Investigator** at the completion of this investigation will be paid in full at that time. **Client further agrees that no written report, photographs and etc. will be provided to the Client until all monies due the Investigator is paid in full.** All monies not paid in full as agreed will be subject to a one and one-half percent (1-1/2 %) interest charge per month or any portion thereof for each and every month the balance remains unpaid. Client further agrees to pay all costs of collection plus reasonable attorney fees.

(9) All reports furnished to the **Client** by the **Investigator** are for the information of the **Client** only. The **Client** agrees to hold the **Investigator** harmless from any and all damages, which are occasioned by any disclosure of any part of said reports. In Witness Whereof, the Parties set their hands on the date, which is first mentioned above.

**CLIENT:** _Rose M. Wright_ **Seal** Date _Dec. 10 03_ **AGENCY**
**REPRESENTATIVE:** _Lloyd W. Davis_

██████████████████████

P.O. BOX 1393
WALDORF, MD. 20604
Phone # 301-843-7288

July 27, 2004

Ms. Rose M. Wright
5428 Downing Street, Apt # 9-B
Alexandria, LA. 71301

Re: Melvin Thomas

Dear Ms.

Please accept my apologizes for the lateness of this report, dated March 6, 2004, but I thought  had sent it to but in reviewing my files  yesterday I found the report, however I do remember speaking to you on several occasion and kept you up to date on my progress.

I also remember in January I sent you copies of the information I obtained from the Superior Court for the District of Columbia which we spoke later and you said you had not received them and then I did not get them returned to me.

I am sending this package to you by FedEx so I will be sure you received it..

Sincerely,

Lloyd Davis

# DAVIS INVESTIGATIVE SERVICES, LLC

## WASHINGTON, D.C          MARYLAND

🍂

## Investigative Report

DATE:                  March 6, 2004

CLIENT:                Rose Wright

███████████████

SUBJECT:               Melvin E. Thomas
                       DOB 12-11-1961
                       SSN 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

DATE OF ASSIGNMENT:    12-13-2003

ASSIGNMENT:            Background

Pursuant to your request to conduct an investigation concerning the arrest of Melvin Thomas on 12-27-1989, with particulars information please find below the results of my investigation.

On 12/15/2003, I contacted the Criminal Clerk's office of the Superior Court for the District of Columbia and was advised by court personnel the case file I was inquiring about was on microfilm and I would have to respond to the court file a formal request for copies of the files.

On 12/16/2003, I responded to the D.C. Superior Court for the District of Columbia and filed a written request for copies of the entire Felony Cases F-14491-80 sand F-14492-89 to include the police report, statement and evidence reports.

On December 18, 2003, in an attempt to interview the private security guard Terry Viands I responded to the address, 1357 Wisconsin Avenue N.W. the former address for Britches Great Outdoors, which was the scene of the crime on December 27, 1989, and the business at this address was vacant.

I then checked out an other location at 1245 Wisconsin Ave N.W. and it also was closed,

1

On December 22, 2003 I was advised that the court case file copies I requested were ready for pick up.

On December 24, 2003, I responded to the Superior Court of the District of Columbia, Room # 4001 to pick up the requested copies. Up on my arrival I was presented three (3) copies of the "Judgment and Commitment/Probation Order, Amended", United States vs. Melvin E. Thomas, "Mental Examination Order with Statement of Charges Attached" "Complaint" "Grand Jury Indictment for Melvin E. Thomas and Desiree Pitts" When questioned about the other documents I had requested I was told they were not in the files so they could not respond and he had no ideal where I could find them.

On January 6, I responded to the Second District Detective's Office with the intent to of possible obtaining further information about the incident and was advised by the sergeant on duty that the investigative case files I was requesting were not in their office because they had been sent to archives and if they were I would have to have a subpoena to review it.

On January 15, 2003, I attempted to contact the administrative office for Britches, 703-893-2083 in my effort to locate the security guard, Terry Viands involved in the shooting on 12-27-1989, and the phone number was disconnected. I also checked the Verizon phone book for phone numbers for other Britches location and all of their phone that were listed were not in services. I checked the Verizon Information Assistance and they had no further listings for Britches so apparently the stores were out of business.

On January 30, 2004, I accessed a commercial database in an attempt to located information on a Terry Viands. The only information returned was a Terry L. Viands who was 40 years of age but there was no local D.C. address provided. There was a Gaithersburg, Md. address in 1990 but his current address was in Fort Worth, TX.

On February 13, 2003, this information was provided to the Client and she requested that I attempt to locate Desiree Pitts and interview her.

On February 24, 2004, I accessed two (2) commercial databases in my endeavor to locate Ms Pitts. The most current address available was in 2002 which was 7202 Donnell Place, Apt # BW, District Hgts., Md.

Other addresses listed were in 2001, were 1527 Beaver Heights, Md. and 2809 Curtis Drive, Temple Hill, Md.

On February 25, 2004, I responded to the Donnell Pl. address and Ms. Pitts was not known at this address.

On February 29, I checked out the Beaver Heights address was she not known there. The front door of the apartment build at and 2809 Curtis Drive, Temple Hill, Md. was secured and I was unable to gain access.

2

At this time no other services were performed.