UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MELVIN E. THOMAS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> JUSTICE, *et al.*, ) <br> ) <br> Defendant. ) | Civil Action No. 06-1994 (RMC) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant United States Department of Justice's Motion for Summary Judgment [Dkt. # 13]. Having considered the Complaint, Plaintiff's Opposition, and the entire record of this case, the Court will grant the Motion.

**I.  BACKGROUND**

Plaintiff brings this civil action against the United States Department of Justice ("Justice Department") under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, for the alleged failure of the Executive Office for United States Attorneys ("EOUSA") to respond to his request for information. *See* Compl. at 1-2.

In March 2004, Plaintiff submitted several letters to the EOUSA requesting records pertaining to his criminal case before the Superior Court of the District of Columbia. Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), Decl. of John F. Boseker ("Boseker Decl.") ¶ 6; *see* Compl. at 1-2. Plaintiff's initial request in relevant part stated:

1

> Request information in the case of United States v[.] Melvin Thomas #F14491-89. Arrested 12-27-89. Statements made to investigating officers or Detectives at 2nd District MPD 3320 Idaho Ave NW by witnesses: Terry Viands/Craige Field/Mrs. Field [and] any other statement made. Officers or Detectives reports on the condition of the coat worn by Melvin Thomas.

Boseker Decl., Ex. A (FOIA Request). The EOUSA acknowledged receipt of Plaintiff's request, assigned FOIA No. 04-823, by letter. Boseker Decl. ¶ 7 & Ex. B (April 1, 2004 Letter from M.A. O'Rourke, Assistant Director, Freedom of Information/Privacy Act Unit, EOUSA). More than two years passed without a substantive response from the EOUSA. *See* Compl. at 1; Boseker Decl. ¶¶ 7-12. Only after the filing of the instant civil action did the EOUSA appear to act on Plaintiff's FOIA request, and the EOUSA's response is based on the request set forth in the Complaint. Boseker Decl. ¶ 13. Plaintiff described his request as follows:

> Plaintiff's request was for the prosecution file witness' statements of Terry Viands; Craige Field, Mrs. Field, any other statements made on the 27th of Dec[ember 1989] or shortly after, and in particular any reports done on a green overcoat containing a bullet hole – Case No. F14491-89.

Compl. at 1. The EOUSA's search for and review of records "in connection with this request adhere to the scope of the complaint, which is specific and does not seek all records" in the prosecution file for Criminal Case No. F-14491-89. Boseker Decl. ¶ 13.

The EOUSA released 9 pages of records in part and withheld 44 pages of records in full pursuant to FOIA Exemptions 6, 7(C), 7(D), and 7(F). Boseker Decl. ¶¶ 14-15 & Ex. I (March 16, 2007 letter from W.G. Stewart, Assistant Director, Freedom of Information/Privacy Act Staff, EOUSA).

In this action, Plaintiff demands "release [of] the prosecution file in criminal case F13391-89, in its entirity [sic]." Compl. at 2 (Relief Requested).

## II.  DISCUSSION

**A.  Summary Judgment Standard**

The Court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with FOIA. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[1] *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted

---

[1] In support of its Motion, Defendant has submitted the declaration of John F. Boseker, Attorney Advisor, EOUSA, who is personally familiar with the handling of Plaintiff's FOIA request, as modified.  Boseker Decl. ¶¶ 1-2.

by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. The EOUSA's Search for Responsive Records

In determining the adequacy of a FOIA search, a court is guided by principles of reasonableness. *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg*, 23 F.3d at 551. To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt,* 897 F.2d at 542.

It was clear from Plaintiff's request that he was prosecuted in the Superior Court of the District of Columbia. The EOUSA forwarded Plaintiff's request to the United States Attorney's Office for the District of Columbia ("USAO/DC"), the office most likely to maintain records responsive to Plaintiff's FOIA request. Boseker Decl. ¶ 19. The USAO/DC maintains records in two computer case tracking systems: RCIS, the Superior Court database, and CFITS, the closed case

database. *Id.* Using Plaintiff's full name and the criminal case number he provided as search terms, staff located the criminal case file for <u>United States v. Melvin Thomas</u>, Criminal Case No. F-14491-89. *Id.* ¶ 18.

Plaintiff appears to challenge the adequacy of the EOUSA's search on the ground that the search yielded no records pertaining to his coat. *See* Pl.'s Mot. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 4. In addition, he argues that the records actually released to him in redacted form "are useless and does [sic] not comply with plaintiff[']s request" in that they are not responsive to his "specific request [] for information on the bullet hole in the inside coat pocket." *Id.* at 16.

The adequacy of an agency's search is not determined by the results of the search or by the information ultimately released by the agency. Rather, "the adequacy of a FOIA search is generally determined . . . by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.*, 844 F. Supp. 770, 777 n.4 (D.D.C. 1993) (the search, not the results of the search, must be reasonable). An agency's search is not presumed unreasonable because it fails to find all relevant material. *See Steinberg*, 23 F.3d at 551 (question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate"); *see also Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998); *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

Having reviewed the EOUSA's supporting declaration and Plaintiff's challenges to the search, the Court concludes that the agency's search was adequate and employed methods reasonably expected to produce the information requested.

### C. The EOUSA's Vaughn Index

The EOUSA's search yielded four documents described in the *Vaughn*[2] index as follows: (1) MPD Crime Scene Evidence Examination Section Evidence Report/Property Record (12/27/89) (8 pages); (2) MPD Report of Investigation (12/27/89) (36 pages); Voluntary Statement Form (Store) (12/27/89) (1 page); and (4) Victim Impact Statements (8 pages). In the index, the EOUSA sets forth its justification for withholding all or portions of the documents. Plaintiff challenges the adequacy of the *Vaughn* index submitted in support of the EOUSA's Motion for Summary Judgment. *See* Pl.'s Opp'n at 2-3, 24. In his view, the *Vaughn* index provides only vague descriptions of the four documents at issue, and "does not treat each requested document individualy [sic]." *Id.* at 24.

A *Vaughn* index is relevant to the Court's determination of whether an agency properly withheld information responsive to a FOIA request pursuant to a particular FOIA exemption. The index "facilitates the trial court's duty of ruling on the applicability of certain invoked FOIA exemptions, gives the requester as much information as possible that he may use to present his case to the trial court and thus enables the adversary system to operate." *Cucci v. DEA*, 871 F. Supp. 508, 514 (D.D.C. 1994) (citing *Lykins v. U.S. Dep't of Justice*, 724 F.2d 1455, 1463 (D.C. Cir. 1984)). It must explain each withheld document or portion thereof, and the agency's justification for withholding information. *See Vaughn*, 484 F.2d at 827. The Court has reviewed the EOUSA's *Vaughn* index and concludes that it adequately sets forth the agency's reasons for withholding all or portions of each document.

---

[2] *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

**D. Exemption 7**

    1. Law Enforcement Records

Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The responsive records are maintained by the USAO/DC Superior Court Criminal Division. Boseker Decl. ¶ 18. They "pertain to the investigation and prosecution of [Plaintiff] for assault with intent to kill another person, assault with a dangerous weapon (two counts), and ultimately pleading guilty to assault to kidnap while armed." *Id*. In the course of this activity, Plaintiff "fired a number of pistol shots at a number of persons, wounding one in the process and threatening others with bodily harm." *Id.*

From this description, which Plaintiff does not challenge, the Court concludes that the records at issue are law enforcement records within the scope of FOIA's Exemption 7.

2. Exemption 7(C)[3]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). Exemption 7(C) allows broad categorical protection of information that identifies third parties in law enforcement records. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (records revealing subjects, witnesses, and informants in law enforcement investigations categorically exempt). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of the individual mentioned in the record against the public's interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). It is the "interest of the general public, and not that of the private litigant" that the Court considers in this analysis. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981) (citing *Ditlow v. Shultz*, 517 F.2d 166, 171-72 (D.C. Cir. 1975)). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Pursuant to Exemption 7(C), the EOUSA withholds "the identities of and personally-identifiable information about third-party individuals" who "furnished information to local law

---

[3] The EOUSA relies on both Exemptions 6 and 7(C) to withhold all information pertaining to particular third party individuals to protect their personal privacy interests. Boseker Decl. ¶¶ 28, 32. The Court concludes that the information is properly withheld under Exemption 7(C), and, therefore, the Court need not address the applicability of Exemption 6 to the same information. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992). For this same reason, the Court will not address the applicability of Exemption 7(F), invoked in conjunction with Exemptions 7(C) and 7(D), to protect "third parties[] who provided information about the criminal investigation [and who] express fear for their safety and/or the safety of others, given the violent nature of the incident and their proximity to it." Boseker Decl. ¶ 39.

enforcement authorities and are merely mentioned in [Plaintiff's] criminal file." Boseker Decl. ¶ 23. The EOUSA asserts that release of such identifying information "could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them." *Id.* In addition, it argues that release of this information could "lead to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case." *Id.* Lastly, the EOUSA states that there is "no public interest [to] counterbalance the protected individual[s'] privacy right in the information withheld" under Exemption 7(C), as its dissemination "would not help to explain the activities and operations of the EOUSA." *Id.* ¶ 26.

The EOUSA also withholds the identities of "local law enforcement personnel who participated in the investigation and prosecution of this case or whose names appear in related documents." Boseker Decl. ¶ 25. The duties and assignments of these law enforcement officers "are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm." *Id.*

"Plaintiff conceeds [sic] that [E]xemption 7(C) applies to names of third parties and to other identifying information but contest[s] both the defendant[']s decision to withhold certain statements and reports on the coat taken into evidence, and it's [sic] failure to segregate and or redact the records to[] produce non-exempt information on pages that also contain exempt information." Pl.'s Opp'n at 18. He makes three arguments in favor of releasing in full the statements of Terry Viands and Craige Field and any reports about his coat.

First, Plaintiff argues that there is a public interest in the release of this information. Release is necessary for "exposing eregeous [sic] erros [sic] such as when the prosecution unit overzealously pursues a prosecution by means that seriously affect the integrity of the Judicial

9

System by proffering fales [sic] evidence using perjury and then withholds exculpatory evidence." Pl.'s Opp'n at 7. He requests the records in order "to cure a fundamental defect in the [Superior Court] proceedings and to remedy the conviction of an actually innocent person." *Id.* at 2. In his view, "[t]here is no exemption to deny plaintiff the reports on his personal property that can prove his innocence." *Id.* at 4. Plaintiff evidently believes that these records contain exculpatory evidence, *see Brady v. Maryland*, 373 U.S. 83 (1963), for use in challenging his Superior Court conviction, and that no otherwise applicable FOIA exemption takes precedence. Such is not the law.

The purpose for which a requester seeks federal government records is not relevant in a FOIA case. *See Engelking v. DEA*, 119 F.3d 980, 980-81 (D.C. Cir. 1997) (per curiam) ("To the extent [the plaintiff] argues that he seeks exculpatory information, a requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA."), *cert. denied*, 522 U.S. 1094 (1998). Moreover, it is the "interest of the general public, and not that of the private litigant" that the Court considers in this analysis. *Brown*, 658 F.2d at 75. Public interest in disclosure of federal government records "does not include helping an individual obtain information for his personal use." *Oguaju v. United States of America*, 288 F.3d 448, 450 (D.C. Cir. 2002), *judgment vacated sub nom. Oguaju v. U.S. Marshals Serv.*, 542 U.S. 970 (2004), *judgment reinstated, Oguaju v. United States*, 378 F.3d 1115 (D.C. Cir. 2004), *modified*, 386 F.3d 273 (D.C. Cir. 2004), *cert. denied*, 544 U.S. 983 (2005). "The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction." *Burke v. U.S. Dep't of Justice*, No. 96-1739, 1999 WL 1032814, at *4 (D.D.C. Sept. 30, 1999); *Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d 101, 110 (D.D.C. 2003) (disclosure under FOIA of potentially exculpatory information that prosecutors must disclose to criminal defendants pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), is in a plaintiff's private interest, not

the general public interest), *reconsid. denied*, 268 F. Supp. 2d 34 (D.D.C. 2003); *Johnson v. U.S. Dep't of Justice*, No. 85-714, 1991 WL 251940, at *1 (D.D.C. Nov. 13, 1991) (possibility that disclosure of records might reveal that prosecution witnesses at requester's criminal trial were given favorable treatment for their testimony which was not disclosed at trial did not outweigh witnesses' substantial privacy interests); *cf. McClain v. U.S. Dep't of Justice*, 13 F.3d 220, 220-21 (7th Cir. 1993) (fee waiver denied to indigent prisoner who pursued his private interest – a challenge to his criminal conviction – in seeking FBI records about himself).

Second, Plaintiff argues that the EOUSA's three-year delay in responding to his FOIA requests is an act of "bad faith," particularly because the agency responded only after he filed the instant civil action. Pl.'s Opp'n at 5, 10; *see* Compl. at 2 (Relief Requested). The EOUSA does not dispute that there was a delay in responding to the Plaintiff's FOIA request, but, aside from Plaintiff's unsupported assertions, nothing in the record suggests that the delay was purposeful. The Court declines to order the release of the requested records solely because of the EOUSA's long-delayed response.

Third, Plaintiff argues that, because he already knows the identities of the third parties, no purpose is served by withholding their statements from him. *See* Pl.'s Opp'n at 9-10. He further states that he seeks no personal or confidential information; he only wants their initial statements to police on the date of the underlying incident. *Id.* at 9, 22. His argument is not persuasive. Third parties' privacy interests are not lost because a requester knows or can determine from a redacted record their identities. *See Weisberg*, 745 F.2d at 1491 (fact that requester can identify alleged informants "in no way undermines the privacy interests of these individuals in avoiding harassment and annoyance that could result" should the agency confirm the mention of their names in the requested records); *Burke*, 1999 WL 1038214, at *6 ("The fact that the requestor

11

might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed."). Nor do third parties lose their privacy interests because their names already have been disclosed. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (fact that pictures of deceased deputy White House counsel had been made public did not "detract[] from the weighty privacy interests involved"); *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (public acknowledgment by subject of the FOIA request of an investigation of his alleged improper conduct did not "waive all his interest in keeping the contents of the [requested] file confidential"), *cert. denied*, 525 U.S. 891 (1998).

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Servs., Inc.*, 926 F.2d at 1206 (holding that "names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [are] exempt from disclosure"). Similarly, Exemption 7(C) protects the privacy interests of law enforcement personnel whose names are contained in law enforcement records. *See Rugiero*, 257 F.3d at 552; *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in shielding the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Anderson v. U.S. Marshals Serv.*, 943 F. Supp. 37, 40 (D.D.C. 1996) (approving withholding of the names of federal and state law enforcement officers

and other government personnel, and the names and register numbers of prisoners other than the Plaintiff mentioned in responsive records).

The Court concludes that the EOUSA's decision to withhold information under Exemption 7(C) was proper.

3.  Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation. *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality is determined on a case-by-case basis, and the Court must determine "whether the particular *source* spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172 (emphasis in original). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74). The nature of the crime investigated and the informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179-80; *Quiñon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996). Here, the EOUSA withheld certain information on the ground

that it was obtained under implied assurances of confidentiality.  *See* Boseker Decl. ¶¶ 35-37 & *Vaughn* index (Docs. 2 and 4).

First, the EOUSA applies Exemption 7(D) to protect individuals who provided information as confidential sources during a criminal investigation, some of whom were eyewitnesses to an armed robbery committed by the Plaintiff. Boseker Decl. ¶¶ 35-36.  During that incident, the EOUSA states that the Plaintiff "fired numerous shots at numerous bystanders, wounding one person, and threatening to harm others." *Id.* ¶ 36.  The agency asserts that "the requisite circumstances surrounding this violent and intimidating criminal act [] give rise to a[] reasonable inference that information was provided with an assurance of confidentiality." *Id.* "[M]ore than one of these sources indicated continuing fear of the [Plaintiff]." *Id.* Exemption 7(D) is "invoked on a duplicative basis with Exemptions [7(C) and 7(F)]." *Id.*

In addition, the EOUSA withholds a Report of Investigation provided by the Metropolitan Police Department which contains the following statement:

> This report is the property of the Metropolitan Police Department. Neither it nor its contents may be disseminated to unauthorized personnel.

Boseker Decl. ¶ 37 & *Vaughn* index (Doc. 2).  According to the agency, this statement "creates at least a reasonable understanding of implied confidentiality (if not actually express confidentiality) in the local law enforcement sharing of this information with the [United States Attorney's Office] for the limited purpose of the Thomas prosecution." Boseker Decl. ¶ 37.  The contents of this report "are reflected in the other records . . . containing the same investigative information from which the report was compiled." *Id.*

The EOUSA asserts that disclosure of information provided by confidential sources "could have a disastrous impact on the ability to obtain this kind of investigative information in the

future, and would have a chilling effect upon the free-flow [sic] of information essential to pursue and resolve criminal prosecutions." Boseker Decl. ¶ 35. Particularly with respect to individual informants, disclosure of information could place them in danger or would "likely mak[e] them targets of harassment or other forms of reprisal." *Id.*

Plaintiff reiterates that he seeks no confidential information about any confidential sources, and presumes that his existing knowledge of the contents of the witnesses' statements warrants disclosure. *See* Pl.'s Opp'n at 20-22. In addition, he asserts that the witnesses' public statements to the news media are "the exact statements plaintiff is seeking in his request," *id.* at 20, such that any confidentiality has been waived. These arguments are not persuasive.

Nothing prevents a police department from being a confidential source for purposes of Exemption 7(D). *See Meserve v. U.S. Dep't of Justice*, No. 04-1844, 2006 WL 2366427, at *10 (D.D.C. Aug. 14, 2006) (withholding under Exemption 7(D) material from State of Ohio where transmittal contained a statement that the data contained therein "is only to be used for criminal justice purposes"); *Founding Church of Scientology of Wash., D.C., Inc. v. Levi*, 579 F. Supp. 1060, 1063 (D.D.C. 1982) (identities of state, local and foreign law enforcement agencies properly withheld under Exemption 7(D)), *aff'd*, 721 F.2d 828 (D.C. Cir. 1983). The underlying crimes for which the Plaintiff was investigated were violent in nature; Plaintiff was not a mere shoplifter as he asserts. *See* Pl.'s Opp'n at 21-22. Although the underlying offense need not involve a major drug conspiracy, *see Mays v. DEA*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding source supplying information about conspiracy to distribute crack and powder cocaine), or murder, *see Shores v. FBI*, No. 98-2728, 2002 WL 230756, at *4 (D.D.C. Feb. 2, 2002) (withholding identities and identifying information of three cooperating witnesses with knowledge of murder of which plaintiff was convicted). The offense need not involve violence at all in order for an implied assurance of

confidentiality to exist. *See Stolt-Nielsen Transp. Group Ltd. v. United States*, 480 F. Supp. 2d 166, 181 (D.D.C. 2007) (Exemption 7(D) protects information provided by co-conspirators in Justice Department's Antitrust Division criminal investigation because "retaliation is a harsh reality in the marketplace").

The Court concludes that the EOUSA properly withheld information under Exemption 7(D).

### E. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). However, the Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The EOUSA reports that, having reviewed each document line-by-line and excluding information properly withheld under Exemptions 7(C) and 7(D), there remain "no meaningful portions that could be released without destroying the integrity of the document[s] or without identifying a third party individual or information provided with an understanding of confidentiality." Boseker Decl. ¶ 40. With respect to the Victim Impact Statements, the EOUSA asserts that references to the Plaintiff are "inextricably intertwined with third party individual information." *Id.*, *Vaughn* index (Doc. 4).

Plaintiff counters that the EOUSA "did not adequately address the segregability issue," Pl.'s Opp'n at 16, and suggests that the agency "should have also described what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.* at 17.

As stated above, the Court concludes that the EOUSA's *Vaughn* index is adequate. It adequately states its justification for withholding the relevant documents in full.

### III.  CONCLUSION

For the reasons set forth above, the Court concludes that the EOUSA fulfilled its obligations under FOIA. EOUSA's Motion for Summary Judgment [Dkt. # 13] will be granted. A memorializing order accompanies this Memorandum Opinion.

Date:  January 24, 2008                              /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge